JOHN J. NICHOLSON *et al.*, Respondent, *against* WILLIAM C. CONNER, SHERIFF OF THE CITY AND COUNTY OF NEW YORK, Appellant.

(Decided January 6th, 1879.)

Since the passage of the statutes allowing parties to be witnesses in their own behalf, the rule that where a witness is unimpeached, and the facts sworn to by him are uncontradicted, his testimony cannot be disregarded by the court or by the jury, is no longer in full force. There is now an exception in the case of a party who is a witness in his own behalf, and the credibility of such a witness is always a question for the jury, who may find a fact in opposition to his uncontradicted evidence.

Where one W. had, although insolvent for some time, been engaged in carrying on business in his own name, and in his own name bought goods, and after preparing them for market shipped them and had the bills of lading made out in his own name, and drew his own drafts upon the consignees for the amount of the shipment, and one of such shipments was seized under an attachment against his property in a suit by one of his creditors, and the plaintiff then claimed the goods, and in a suit against the sheriff who had seized them was the only witness on his own behalf to show that he had advanced the money to W. to purchase the goods, on the agreement that they should always be considered his property from the time they were purchased, and that after they were sold that the profit on the transaction, if any, should be applied in payment of a debt due from W. to him:—*Held*, that although the plaintiff was not impeached, nor his evidence contradicted, yet the defendant was entitled to have submitted to the jury the question of the probability of such an agreement between W. and the plaintiff.

APPEAL by the defendant from a judgment of the Marine Court of the city of New York, entered on an order of the general term of that court, affirming a judgment for the plaintiffs on a verdict rendered by direction of the court at trial term.

The action was brought to recover damages for the taking and conversion of 753 cases of canned peaches, alleged to have been the property of the plaintiffs.

The defendant justified the taking and conversion, under a warrant of attachment against one William M. Winks, issued in a suit against him in the Supreme Court for

$1149 62, and alleged that the goods so taken were the property of Winks.

On the trial it appeared by the evidence that the plaintiff had been engaged in a series of transactions with Winks, in the course of which the goods in question had been shipped to Messrs. H. K. & F. B. Thurber & Co. at New York by Winks at Baltimore. The plaintiffs were creditors of Winks, who was in embarrassed circumstances, and was indebted to the plaintiffs in a large amount. The series of transactions between Winks and the plaintiffs was in the purchase and canning of fruits and oysters by Winks, and the sale of them to various persons. The plaintiffs advanced money for the purchase of the goods, under an agreement, as testified to alone by Nicholson, one of the plaintiffs, that they should advance him the money to buy the goods, " provided that the goods should always be considered ours from the time the goods were purchased, and as soon as packed." In case any profit was made on the transaction it was to go to reduce the debt of Winks to the plaintiffs.

On the trial the court directed a verdict for the plaintiffs, and declined to submit to the jury what the agreement was between the plaintiffs and Winks as to the goods in question, on the ground that the evidence of the plaintiff Nicholson, in regard to that, was uncontradicted, and must be taken as true.

*Charles W. Gould*, for appellant.

*Wm. W. Pearson*, for respondent.

CHARLES P. DALY, Chief Justice.—Under the decision of the Court of Appeals in *Kavanagh* v. *Wilson* (70 N. Y. 179), this judgment will have to be reversed. In that case, the court, upon the plaintiff's evidence, which was uncontradicted, directed a verdict for the plaintiff and refused the defendant's request to have the case submitted to the jury. The making of a special contract to pay the plaintiff $4,000 for negotiating the sale of certain real estate, rested upon

the testimony of a single witness, the plaintiff's son, and there was nò other evidence or circumstance in the case tending to prove it. The Court of Appeals held that the case should have been submitted to the jury, because the witness was not disinterested. He was the plaintiff's son, engaged in the plaintiff's business, and thus biased and interested in feeling. He was to receive a compensation for drawing the contract, which was dependent upon his father's success in the suit, and the court regarded the story he told as not free from improbability. For these reasons, the court did not regard him as coming within the rule, that when a disinterested witness testifies to a fact within his own knowledge, which is not in conflict with the evidence, and not in itself improbable, he is to be believed, and the fact is to be taken as legally established.

In the present case, the court refused to submit to the jury what the agreement between the plaintiff and Winks was, on the ground that the evidence of the plaintiff respecting the contract was uncontradicted, and *must* be taken as true. The defendant in the action was the sheriff who had taken the goods of one Winks under an attachment in a suit brought by a creditor against Winks. Winks was examined, but was not asked as to the arrangement or agreement between him and the plaintiff; so that, as in *Kavanagh* v. *Wilson* (*supra*), the fact of the existence of such an agreement rested upon the plaintiff's evidence alone. This, the judge decided, must be taken as true, although the plaintiff was the chief party in interest; and upon the plaintiff's testimony alone, he directed a verdict to be entered in the plaintiff's favor. He assumed what the plaintiff swore to as true, and as legally established, although the plaintiff's statement, to use the language of the Court of Appeals, "was by no means free from improbability." If all the profits of the transactions, for there were many besides the particular shipment which gave rise to this suit, were to be taken by the plaintiffs, how was Winks to live, being an insolvent, and owing between $25,000 and $30,000? If Winks in these various transactions was merely acting as a

Nicholson v. Conner.

buyer, packer, salesman and shipper for the plaintiffs of the the canned fruit, his interest in the profits being only that they were to be applied towards the reduction of his debt to the plaintiffs, why did he do the business in his own name, have the bills of lading made out to himself, and draw his own draft upon the consignees for the amount of the shipment? These were circumstances which the defendant had a right to have submitted for the consideration of the jury, upon the intrinsic probability of his statement.

The rule laid down in *Newton* v. *Pope* (1 Cow. 110), that where a witness is unimpeached, and the facts sworn to by him are uncontradicted, either directly or indirectly by other witnesses, and there is no intrinsic improbability in the relation he gives, his testimony cannot be disregarded by the court or by the jury, prevailed, as has been pointed out by Rapallo, J., in *Elwood* v. *The Western Union Telegraph Co.* (45 N. Y. 554), when parties were not allowed to give testimony in their own causes, and where any one having the slightest pecuniary interest in the matter in controversy was also rigorously excluded, and it was even then subject to considerable qualification. (*Dunlop* v. *Patterson*, 5 Cow. 243.) Now that the law has been changed and parties may be witnesses in their own cases, this rule has not the force that it formerly had; and when a party in the cause goes upon the stand as a witness his credibility is *necessarily* a matter of consideration, for he has a direct interest in the whole subject-matter, and where, as in the present case, the proof of the existence of a cause of action rests upon the testimony of the plaintiff alone, it is better that a jury should weigh and pass upon it than that the court should assume that it must be true, because there was no conflicting evidence. There may be no evidence directly contradicting such a witness; but it does not follow from that that his statement must be true. There may be an exercise of judgment in respect to his testimony;—its consistency, its probability, and the manner in which he gives it; for the look, voice, bearing and whole demeanor of a witness frequently indicate what weight should be given to his testimony, or whether

it is entitled to any. I have tried causes in which witnesses have come upon the stand and given testimony which was not contradicted, who were not believed either by the court or by the jury, and this has been a not unfrequent experience. There has been something not easily described, but readily recognized, in the bearing and manner of the witness that carried conviction to the minds of all who heard him, that he was not swearing to the truth.

It is unnecessary to comment upon the strong disposition which a party has to establish his cause of action or defense, and the temptation he is under to color, pervert or subvert the truth. I do not mean to express any dissatisfaction with the change that has been made in the law. On the contrary, I think it has aided the administration of justice ; but it has greatly increased the giving of false testimony, especially by parties ; so that it is safer, where a cause of action or a defense rests solely upon the testimony of a party, to leave it to the twelve minds that constitute the jury to determine the weight or value to be attached to it than to assume, as a rule of law, that it must be true because it was not contradicted. In many cases the other party may not be able to contradict it. He may be an assignee, an executor, or the nature of the evidence may be such that it is not in his power to controvert it by testimony; and in my opinion, the ends of justice are promoted by leaving such evidence upon its intrinsic probability to the judgment of a jury.

The judgment should be reversed and a new trial ordered, costs to abide the event.

VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, costs to abide the event.