Lawrence, J.
It will appear from the statement which has been made of the case that the question presented for the consideration of the referee was one purely of fact. With the exception of the clerk from Drexel & Morgan’s office, and the brokers, all the witnesses on the part of the plaintiff were either interested or had been interested in the subject in controversy directly or indirectly.
Upon the part of the defendant it is also true that he was the only witness who did speak or could speak as to the originartransaction, and he most flatly contradiccted the plaintiff’s husband and Noyes in respect thereto, denying that he had ever received possession of the bonds after they had been purchased or that he he knew that they had been received, if they were received, by his copartner Noyes.
Under these circumstances we are of the opinion that the result of the referee’s judgment is entitled to great weight, he having had the witnesses before him and being much better able to judge as to the degree of credence which should be given to their testimony than an appellate court which only sees the record.
Noyes himself admits that “we (i. e., Learned and himself) did not separate as good friends.” And we think that a perusal of his testimony will show that he was extremely friendly to the plaintiff and her husband.
In respect to the interviews between Noyes and Learned at Mr. Hand’s office, Noyes is strongly contradicted, both by Mr. Hand and by the defendant Learned. It seems to us that a jury with this evidence before them would have been justified in rendering a verdict for the defendant, and that the decision of the referee is entitled under all the circumstances to the same respect by an appellate court as the verdict of a jury.
The evidence given by the brokers at pages 43, 44, 45 and 48 of the case as to the custom existing in the city of New York where stock has been purchased for investment and *245 not entirely paid for, we do not regard as affecting the case; because the allegation and contention of the plaintiff is not that the defendants assumed to retain possession of the bonds, because they had a lien upon them for a small balance of their charges, but that they retained the same in their possession to take care of them.
We think it a suspicious circumstance that the husband of the plaintiff who, it appears, had two safes of his own, should have left the bonds in the custody of the defendant from May 15, 1818, down to September, 1885, when the demand was made by the plaintiff’s attorney, without collecting any interest thereon, and without making any inquiry in regard to the bonds save and except as he says, possibly once or twice he spoke to Learned to ask if they were all right.
Upon the facts proven therefore, and from the circumstances surrounding the case, we are of the opinion that the judgment of the referee should not be reversed unless some of the exceptions taken to the admission or rejection of evidence by the plaintiff can be maintained as relating to matters substantially affecting the plaintiff’s rights.
It is said by the plaintiff’s counsel that the cases are very rare where a court or jury may absolutely disregard the uncontradicted testimony of witnesses upon a vital point at issue, and find directly contrary to the testimony; and that even when the circumstances or the testimony are open to suspicion, they are careful not to do so; and he cites Lomer v. Meeker (25 N. Y., 363), and Elwood v. Western Union Tel. Co. (45 N. Y., 552). We do not think that the rule laid down in those cases is applicable here. While neither Griswold nor Noyes was impeached, they were certainly both of them contradicted by Learned, who, although an interested witness, was entitled to belief from the referee, if the referee, from seeing the witnesses, deemed him the more worthy of credence.
Besides, in the case of Elwood v. Western Union Tel. Co. (supra), the court, after stating the general rule that where unimpeached witnesses testify distinctly and positively to a fact and are not contradicted, their testimony should be credited, and have the effect of overcoming a mere presumption, goes on to say: “But this rule is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility. The general rules, laid down in the books at a time when interest absolutely disqualified a witness, necessarily assumed that the witnesses *246 were disinterested. That qualification must, in the present state of the law be added. And,furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted by circumstances as well as by statements of others contrary to his own. In such cases courts and juries are not bound to refrain from exercising their judgment and to blindly adopt the statements of the witnesses for the simple reason that no other witness has denied them, and that the character of the witness is not impeached.” See also Kearney v. Mayor, etc. (92 N. Y., 621), and Nicholson v. Connor (8 Daly, 215).
Tested by the rule thus explained by the court of appeals it seems quite clear that Noyes and Griswold were contradicted in this case, and that the referee was justified in exercising his judgment, and was not bound blindly to adopt the statements of those witnesses.
The exception taken, at folio 76 of the case, to the question put to Mr. Griswold as to when the suit by Learned against him was brought, does not avail the plaintiff. The question was quite proper as showing the relations between Learned and the plaintiff’s husband, and as bearing upon the motive the witness might have in testifying against the defendant Learned and as showing his feelings towards him.
The objection to the question put to the defendant Learned: “ Have you had in your personal possession any of the U. S. bonds belonging to the plaintiff at any time?” was not well taken. It tended to show what the real transaction was, and also was in the direct line of the defense set up in the answer. It also tended to contradict the testimony of the plaintiff’s husband in regard to what Learned had said about the bonds being all right. The same remark disposes of the objection at folio 118.
The objection to the question put to the defendant at folio 120 was also properly overruled. The fact that Mr. and Mrs. Griswold had never mentioned the existence of Exhibit Ato the defendant during the seven years in which it is claimed the bonds were in his possession, was quite pertinent as bearing upon the credibility of the witness Griswold’s statements who, as we have seen, the court of appeals say might be contradicted by circumstances as well as by statements of others contrary to his own.
The objection to the question whether Learned had ever collected or known of any collection of any of the principal or interest of said bonds received from or bought for either Mr. or Mrs. Griswold, we do not regard as well taken. That tended to elicit a circumstance strongly contradictory of the probability of the plaintiff’s husband’s and Noyes’ story.
*247 The objection to the question put to the defendant: “ Did you then write a letter to Mr. "William N. Griswold?” was not well taken, because it did not call for the contents of the letter.
The question at folio 125 does, however, call for the contents of the letter, and inasmuch as it does not appear that notice had been given to the plaintiff to produce the letter, we regard the exception as well taken. But as it appears from the answer that the contents of the letter did not relate to this transaction, we are not prepared to say that the evidence injuriously affected the rights of the plaintiff, nor that there should be a reversal on that ground.
The objections taken to the questions put to Learned and to the brokers as to the course of business in regard to stocks bought for investment, were properly overruled, because if it was no part of the business of a broker to keep investment securities, Noyes, who the plaintiffs claim, took the principal part in the transaction involved in this suit, had no tight to bind his partner by receiving investment securities for deposit for safe keeping, and the testimony of the brokers also tended to corroborate that which Learned had already given without objection.
As the question put to Mr. Noyes, at folio 168, was not limited to the time during which he continued to be Learned’s partner, the defendant’s objection thereto was properly sustained .
For these reasons, we think the judgment should be affirmed, with costs.
Van Brunt, 0. J.. and Potter, J., concur.