706 A.2d 650

Jimmy YOUNG

v.

ALLSTATE INSURANCE COMPANY.

No. 1070, Sept. Term., 1997.

Court of Special Appeals of Maryland.

March 3, 1998.

Craig A. Rosenstein (Rensin & Rosenstein, L.L.P., on the brief), Hyattsville, for appellant.

John A. Moody, College Park, for appellee.

Argued before DAVIS and KENNEY, JJ., and KATHLEEN SWEENEY, Judge (Specially Assigned).

DAVIS, Judge.

Jimmy Young appeals the decision of the Circuit Court for Prince George's County granting summary judgment in favor of appellee Allstate Insurance Company, thereby denying uninsured motorist coverage to appellant. This case began when appellant, as plaintiff below, filed a motor tort claim against three defendants: (1) appellee—appellant's auto insurance carrier, (2) Antonio Milano—the uninsured driver of the vehicle that struck appellant, and (3) Fabrico Caro[1]—the owner of the vehicle that struck appellant. After some discovery, appellant agreed to release Fabrico Caro from the case on summary judgment because Caro was out of the country at the time of the accident and had not given permission to Antonio Milano to operate the vehicle that initiated the accident. Process was served on Milano outside of the United States; however, he never filed an answer to the complaint.

On December 13, 1996, appellee filed a Motion for Summary Judgment claiming that appellant was not covered under the policy's uninsured motorist provisions because he (appellant) was using a truck provided by his employer for his "regular use" when the accident occurred. The policy excluded from the definition of "insured auto[s]" vehicles not owned by appellant that were provided for his "regular use." Appellant

---

1. Appellant's brief refers to this defendant as Fabrico *"Carrero."* The pleadings below, however, refer, for the most part, to Fabrico *"Caro"* and occasionally to *"Fabricio"* Caro.

filed a response to appellee's Motion for Summary Judgment on December 24, 1996. The court granted appellee's Motion for Summary Judgment on May 7, 1997 without a hearing.[2] Appellant filed a Motion for Reconsideration, which the court denied on May 30, 1997. Appellant noted this timely appeal on May 29, 1997, in which he raises one question for our review, reframed below:

Did the circuit court err when it granted appellee's Motion for Summary Judgment?

We answer the question in the affirmative and reverse the judgment of the circuit court.

## FACTS

On July 18, 1995, appellant, who worked for the District of Columbia public school system, was operating a District of Columbia vehicle when he decided to go to lunch at approximately 11:45 a.m. The vehicle was a large step van or truck provided by the District of Columbia for appellant's regular use in servicing the District's public schools. Appellant parked the vehicle facing northbound on 18th Street, N.W., Washington, D.C., parallel to the curb. He turned off the ignition, exited the truck, and went to the rear of the vehicle to check the padlock on the back doors. His intent was to enter a nearby McDonald's restaurant that was adjacent to the sidewalk on the side of the street where he had parked.

---

**2.** In making his argument, appellant points out that the Motion for Summary Judgment was granted without a hearing. We find that fact insignificant since no hearing was requested by either party. See MARYLAND RULE 2–311(f) (1998) which provides:

A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall so request in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but it may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.

As stated supra, motions for summary judgment are governed by MARYLAND RULE 2–501.

Appellant was standing approximately ten inches from the rear bumper of the parked truck, still facing the closed rear doors, when he noticed a car coming from the opposite direction (southbound) on 18th Street, N.W. The southbound vehicle, driven by Antonio Milano, made a sudden U-turn, coming close to appellant's truck as it veered around. As the vehicle turned, it made a squealing noise that drew appellant's attention, causing him to turn around and turn his head to his right. After virtually completing the U-turn, Milano backed the vehicle he was driving into appellant's right knee. Despite the impact, appellant was not pushed into anything and he did not fall. He did, however, grab his knee and sit down on the rear bumper of the parked truck. Milano brought his vehicle to a stop, rolled down his window, extended an apology to appellant, and then fled the scene.

As stated above, appellant sued appellee for the uninsured motorist coverage provided for in appellee's insurance policy with appellant, but the lower court granted appellee's Motion for Summary Judgment and this appeal followed.

## DISCUSSION

### *Standard of Review*

█ Motions for summary judgment are governed by MARYLAND RULE 2–501, which provides that, "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." MARYLAND RULE 2–501(e) (1998). *See also Bagwell v. Peninsula Regional Medical Ctr.*, 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996) (holding trial court to same requirements as MD. RULE 2–501). In making its determination, the circuit court must view the facts and all inferences from those facts in the light most favorable to the non-moving party. *Brown v. Wheeler*, 109 Md.App. 710, 717, 675 A.2d 1032 (1996). Even when there is a dispute as to the facts, if resolution of that factual dispute is not material to

the controversy, such dispute does not prevent the entry of summary judgment. *Lynx, Inc. v. Ordnance Products, Inc.*, 273 Md. 1, 8, 327 A.2d 502 (1974). A material fact is one that will affect the outcome of the case. *Id.*

When there are no factual disputes, the trial court must interpret insurance policies using the ordinary and accepted meanings of the words set out in the policy. *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766, 556 A.2d 1135 (1989).

The standard for appellate review of a trial court's granting or denying a motion for summary judgment requires us to determine whether the trial court was legally correct. *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 590–92, 578 A.2d 1202 (1990); *Barnett v. Sara Lee Corp.*, 97 Md.App. 140, 146, 627 A.2d 86, *cert. denied*, 332 Md. 702, 632 A.2d 1207 (1993). In so doing, we review the same material from the record and decide the same legal issues as the circuit court. *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied*, *Scherr v. Nationwide Mut. Ins. Co.*, 337 Md. 214, 652 A.2d 670 (1995).

## I

Appellant claims that there was a dispute as to material fact below and that the lower court misconstrued the applicable uninsured motorist law. Specifically, appellant alleges that the lower court erred when it granted appellee's Motion for Summary Judgment based on a finding that he was "in, on, getting into, or getting out of" a vehicle provided for his "regular use," as opposed to finding that he was a pedestrian at the time of the accident.

Appellee counters that the insurance policy in question excludes vehicles not owned by appellant that are provided for his "regular use" from the definition of "insured auto" as used in the policy's uninsured motorist endorsement. Consequently, appellee asserts that appellant is excluded from claiming uninsured motorist protection while "in, on, getting into, or getting out of" the step van that his employer had provided for his "regular use."

We shall reverse the decision of the lower court, as we are persuaded that the lower court misconstrued the insurance contract and uninsured motorist law, although not necessarily for the reasons stated by appellant. Based on our review of the pleadings that were before the lower court, we find no dispute as to material fact, but hold that the trial court's determination was legally incorrect. We begin our explanation with a synopsis of the relevant uninsured motorist law.

The primary purpose of uninsured motorist insurance "is to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 157, 416 A.2d 734 (1980); *see also Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 721, 737, 436 A.2d 465 (1981) (stating that the purpose of uninsured motorist statutes is to ensure "that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tort[-]feasor complied with the minimum requirements of the financial responsibility law.") (quoting *Webb v. State Farm Mut. Auto. Ins. Co.,* 479 S.W.2d 148, 152 (Mo.App.1972)).

The uninsured motorist statute is remedial in nature, and therefore, should be construed liberally. *See Gartelman,* 288 Md. at 160, 416 A.2d 734. Indeed, the remedial nature of the uninsured motorist statute has led "[t]he courts ... to favor the interests of the insureds to a greater degree than was previously true in regard to any other insurance coverage." 1 ALAN I. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 3.6 (2d ed.1987).

Maryland's uninsured motorist statute requires that every insurance policy contain coverage for damages that "[t]he insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of ownership, maintenance or use of such uninsured motor vehicle." MD.CODE (1997 Repl.Vol.) INSURANCE (INS.), § 19–509(c)(1).

■ The uninsured motorist endorsement of the insurance policy in the instant case provides, in relevant part, under the section entitled "Part 5 Uninsured Motorist Insurance Coverage SS":

We will pay damages for bodily injury, sickness, disease or death, or property damage which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

. . .

*Insured Persons*

1. *You* and any *resident* relative.[3]

2. Any person while in, on, getting into or out of an insured auto with *your* permission.

3. Any other person who is legally entitled to recover because of bodily injury to *you*, a *resident* relative, or an occupant of *your* insured auto with *your* permission.

*An insured auto is a motor vehicle:*

1. described on the declarations page. This includes the *motor vehicle you* replace it with.

. . .

4. not owned by *you* or a *resident* relative, if being operated by *you* with the owner's permission. The *motor vehicle* can't be furnished for the regular use of *you* or any *resident* relative.

Consistent with the Maryland Uninsured Motorist Statute, the policy's "Insured Persons" section specifically establishes three classes of persons that have the ability to recover uninsured motorist coverage as insured persons under the

---

**3.** "You" and "your" are defined in the policy as the policyholder named on the declarations page (appellant) and the policyholder's resident spouse.

policy. We summarize each class of insureds in the order in which they occur in the policy.

## A

### First Clause Insureds

The first class of insured persons, which we will call "first clause insured persons," consists of the named insured, the named insured's spouse, and any resident relative of the named insured. The coverage granted to first clause insureds is personal and comprehensive. *See* ANDREW JANQUITTO, MARYLAND MOTOR VEHICLE INSURANCE, § 8.6(A) 288 (1992); *see also* ANDREW JANQUITTO, *Uninsured Motorist Coverage in Maryland*, 21 U. BALT. L.REV. 171, 222 (Spring 1992). The clause contains no limiting language with respect to insured automobiles and, when read alone or in conjunction with the uninsured motorist section, there is no indication that the first clause coverage runs with an insured vehicle rather than solely with the insured person. *See id.* Rather, reading the uninsured motorist endorsement in conjunction with the rest of the policy and the uninsured motorist statute, it is clear that the policy covers first clause insureds in a variety of situations. *Id.* We believe that the clear meaning of the policy places appellant within this first class of insured persons.

## B

### Second Clause Insureds

The second class of insured persons, which we shall call "second clause insured persons," are all persons "while in, on, getting into or out of an insured auto" [4] with the permission of either the named insured or the named insured's spouse. It is clear that the second clause is an expansion of the uninsured motorist coverage from that allowed in the first clause to all persons while "in, on, getting into or out of an insured auto." It is here, with second clause insured persons, that appellee,

---

4. This and similar clauses are sometimes referred to as occupancy clauses.

as drafter of the policy, saw fit to limit uninsured motorist coverage to some sort of "occupancy" of an "insured auto." Of course, as we explained *supra*, the policy excludes vehicles such as the truck appellant was driving from the definition of "insured auto."

The judicial treatment of such "occupancy" clauses with respect to second clause insureds, although inapplicable to the first class of insured persons, demonstrates the remedial nature of uninsured motorist coverage. Many such demonstrative cases are discussed later in this opinion, as they have been cited by both parties to this appeal in support of their positions. Indeed, the cases indicate how various courts have endeavored to provide uninsured motorist benefits to innocent victims who fit within the second clause of insureds, by manipulating the concepts and meanings of words embodied in the clause. *See id.*

Maryland's uninsured motorist statute does not define the meaning of "in, on, getting into or out of." Appellee's insurance policy also does not define the clause. Moreover, the clause has not received much judicial treatment. A similar phrase—"in or upon, entering into or alighting from"—has, however, received attention from the courts. *See* JANQUITTO, MARYLAND MOTOR VEHICLE INSURANCE, § 8.6(B) 289 (1992); *see also* JANQUITTO, 21 U. BALT. L.REV. at 223. Some courts have found that phrase to be ambiguous.[5] Nevertheless, the "occupancy" clause in the personal automobile policy of the instant case has not been interpreted by the Maryland courts.

## C

### Third Clause Insureds

The third class of insureds in the policy's uninsured motorist endorsement includes any person who is entitled to recover

---

**5.** Specifically, the word "upon" is usually the most troublesome part of the clause. See *Michigan Mutual Insurance Co. v. Combs,* 446 N.E.2d 1001 (Ind.Ct.App.1983) and *Manning v. Summit Home Insurance Co.,* 128 Ariz. 79, 623 P.2d 1235 (App.1980) (both finding the term "upon" to be ambiguous and holding that the meaning of "upon" a vehicle was to be liberally construed).

damages because of "bodily injury" to a first or second clause insured. Appellant certainly is not included in this category.

As stated *supra*, the plain language of the contract indicates that appellant, the name insured, is eligible for uninsured motorist coverage for physical injury whether in an insured vehicle or not. To reiterate, the policy provides:

> We will pay damages for bodily injury, sickness, disease, or death ... which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto.

As indicated above, the first category of "insured persons" is defined in a separate sentence as "[appellant] and any resident relative." It contains no limiting language. The restrictive language of "while in, on, getting into or out of an insured auto" is included with the second defined class of "insured persons" which clearly increases the coverage allowed in the first class but does not restrict it in any way.[6] If appellee wanted to limit the policy's uninsured motorist coverage on appellant, it could have easily written the limitation into the first clause which provides the coverage as it did in the other clause(s).[7] Of course the exclusion would have to comport with the applicable uninsured motorist law.

The restriction regarding the furnishing of a vehicle for regular use applies to whether a *vehicle* is insured, not wheth-

---

6. We note that, in an attempt to otherwise make relevant the restrictive language discussed here, appellant cites the definition of "pedestrian" from page 12 of the policy that defines "pedestrian" as "any person not in, on, or getting into or out of a motor vehicle." This definition, however, is included under the policy's section on Personal Injury Protection, not Uninsured Motorist Insurance.

7. For example, the first class of insured persons hypothetically could have been defined as "[y]ou and any resident relative while not in, on, getting into or out of *a motor vehicle furnished for the regular use of you.*" To be clear, we are not saying here that such an exclusion would be valid. Rather, we give the example to show that an exclusion should be clearly implicated by the policy, lest the drafter fall prey to self-created ambiguities.

er a *person* is insured. The policy clearly indicates that appellant, as named insured, is an "insured person."

## II

### A

### Permitted Exclusions from Uninsured Motorist Coverage

■ As appellant is an "insured person" for purposes of the uninsured motorist coverage provided in the policy, he may be denied such coverage only if he falls under a valid policy exclusion. We hold that he does not.

Maryland's uninsured motorist statute explicitly permits only two exclusions from uninsured motorist coverage: the "owned-but-uninsured" exclusion and the "named driver" exclusion. INS. §§ 19–509(f)1 and 2, respectively. No other exclusions are expressly permitted by statute.[8]

The first exclusion (the owned-but-uninsured exclusion), set forth in INS. § 19–509(f)(1), allows insurers to exclude from coverage the named insured and his resident family members "when . . . occupying or . . . struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured

---

8. The Court of Appeals has stated repeatedly that, "where the Legislature has required specified coverages in a particular category of insurance, and has provided for certain exceptions or exclusions to the required coverages, additional exclusions are generally not permitted." *Gable v. Colonial Ins. Co.*, 313 Md. 701, 704, 548 A.2d 135 (1988); *see also Larimore v. American Ins. Co.*, 314 Md. 617, 622, 552 A.2d 889 (1989) (quoting *Gable*, 313 Md. at 704, 548 A.2d 135); *Nationwide Mut. Ins. Co. v. United States Fidelity & Guar. Co.*, 314 Md. 131, 141, 550 A.2d 69 (1988) (quoting *Gable*, 313 Md. at 704, 548 A.2d 135). *See also Blue Bird Cab Co., Inc. v. Amalgamated Cas. Ins. Co.*, 109 Md.App. 378, 388, 675 A.2d 122 (1996) (citing *Jennings v. GEICO*, 302 Md. 352, 356, 488 A.2d 166 (1985)) (stating that, where the Legislature had mandated insurance coverage, this court will not create exclusions not set out in the statute). *Id.* Despite this principle, however, we have upheld the validity of a third exclusion—the "owned-but-otherwise-insured" exclusion. *Powell v. State Farm Mut. Automobile Ins. Co.*, 86 Md.App. 98, 585 A.2d 286 (1991). We shall discuss this exclusion, *infra*.

or an immediate family member of the named insured who resides in the named insured's household." [9]

The second exclusion (the named driver exclusion), set forth in INS. § 19–509(f)(2), allows insurers to exclude coverage for "the named insured, a family member of the named insured who resides in the named insured's household, and any other individual who has other applicable motor vehicle insurance for an injury that occurs when the named insured, family member, or other individual is occupying or is struck as a pedestrian by the insured motor vehicle while the motor vehicle is operated or used by an individual who is excluded from coverage under § 27–606 [10] of this article." [11]

As stated *supra*, a third exclusion was given legal life when this Court upheld an express "owned-but-otherwise-insured" exclusion in *Powell*, 86 Md.App. at 108, 585 A.2d 286, despite lacking statutory authorization. In that case, Kenneth Powell was injured by an uninsured motorist while driving his wife's car which was insured by State Farm. The State Farm policy on the wife's car had $20,000/$40,000 in uninsured motorist coverage. State Farm also insured a motor vehicle owned by Kenneth Powell under a different policy. The State Farm

---

9. This exclusion encourages Maryland's comprehensive insurance scheme by encouraging "the owner of an uninsured motor vehicle to become insured by imposing upon him the penalty of exclusion from coverage for failure to obtain insurance." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734 (1980). *See Unsatisfied Claim & Judgment Fund v. Hamilton*, 256 Md. 56, 60, 259 A.2d 303 (1969), wherein the court stated as follows: "The legislature apparently concluded that if this irresponsible group were excluded from coverage, its members and future potential members might be induced to become insured so that they might qualify for coverage. If this legislative optimism proved sound, the number of insured vehicles—the evil that produced the statute—would be lessened." *Id.*

10. Section 27–606 allows an insurer to exclude nearly all coverage when a vehicle is operated by a named excluded driver. INS. § 27–606.

11. The named driver exclusion, like the owned-but-uninsured exclusion, balances the insurers interests with the public policy of affording uninsured motorist benefits to those injured by the negligence of uninsured motorists. *See Nationwide Mut. Ins. Co. v. Miller*, 305 Md. 614, 505 A.2d 1338 (1986).

policy that covered Mr. Powell's automobile had $100,000/$300,000 in uninsured motorist coverage. That policy contained the following exclusion:

THERE IS NO COVERAGE:

. . . .

2. FOR BODILY INJURY TO YOU ... WHILE OCCU-PYING ... A MOTOR VEHICLE OWNED BY YOU, YOUR SPOUSE OR ANY RELATIVE, and which is not insured under the liability coverage of this policy.

*Id.* at 100, 585 A.2d 286 (quoting policy) (alteration in *Powell* ).

Mr. Powell sought uninsured motorist benefits from both the State Farm policy covering his wife's car and the State Farm policy covering his vehicle. The lower court held that he was limited to the $20,000/$40,000 limit under the policy covering his wife's car. This Court affirmed. We first found that the exclusion was consistent with the uninsured motorist statute. "To permit such an exclusion will encourage families to obtain coverage for all of their vehicles and thus maximize compliance with the purpose of the statute." *Id.* at 108, 585 A.2d 286.[12] By contrast, we found that *Powell* 's position would lead to an irrational result:

> To hold as appellant also urges, i.e. that his wife's vehicle was not uninsured because it was covered under another policy, would be to permit an owner to buy excess coverage under one policy for one vehicle at a relatively small premium and coverage under a separate policy for his other vehicles at a lesser cost, and have the excess coverage of the first policy apply to the vehicles covered under the subsequent policies.

---

**12.** Notwithstanding *Powell* being this Court's precedent, we note that other states have ruled that the "owned-but-otherwise-insured" exclusion is invalid unless the applicable uninsured motorist statute expressly permits it. *See, e.g. Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985); *Harvey v. Travelers Indem. Co.*, 188 Conn. 245, 449 A.2d 157 (1982). Maryland's uninsured motorist statute does not expressly permit the exclusion.

*Id.* at 110, 585 A.2d 286 (footnote omitted). As an alternative holding in *Powell*, this Court reasoned that, even if the exclusion was invalid, the result would not change: "If the policy exclusion at issue were to be determined to be in conflict with the statute, it would only be in conflict as to the minimum required coverage, i.e., $20,000/$40,000. As to any excess coverage, it would be a valid exclusion." *Id.* at 113, 585 A.2d 286.

The exclusion sought by appellee in the instant case, however, will not meet with the same fortune as the one in *Powell*. In short, appellee seeks to exclude uninsured motorist coverage for appellant, the named insured, when he is in, on, getting into or out of a vehicle not owned by him, but instead, furnished to him by a third party for his regular use. None of the three aforementioned permitted exclusions includes that scenario.

To summarize, the plain language of the insurance policy does not set forth the exclusion as argued by the parties below with regard to appellant as the named insured. Even if the exclusion sought here by appellee were clearly written into the policy, it is not one of the aforementioned explicitly permitted exclusions. When a clause in an insurance policy is contrary to State public policy, as set forth in the Insurance Code or other statute, it is invalid and unenforceable. *Blue Bird Cab Co., Inc. v. Amalgamated Casualty Ins. Co.*, 109 Md.App. 378, 388, 675 A.2d 122 (1996) (citing *Jennings v. GEICO*, 302 Md. 352, 356, 488 A.2d 166 (1985)). When the legislature has mandated insurance coverage, this Court will not create exclusions not set out in the statute. *Id.* To construe the policy as appellee wishes, as the lower court must have done in order to grant summary judgment, would countermand the remedial purpose underlying the Maryland uninsured motorist statute, which is to provide recovery for innocent victims of motor vehicle accidents caused by uninsured motorists. *Gartelman*, 288 Md. at 159, 416 A.2d 734. The insurance policy should effectuate this purpose. We accordingly reverse the granting of appellee's Motion for Summary Judgment.

## III

Even if the insurance policy and applicable law properly could be interpreted as the parties and the lower court have construed, we are not persuaded by appellee's arguments that the lower court would be legally correct in determining that appellant was "in, on, getting into, or out of" the vehicle in question. As we stated above, Maryland has not construed that particular clause. The few relatively applicable cases can be distinguished from the facts of the instant case. Although most of the cases construing similar clauses seem to support appellee's proposed construction, most, if not all, are from other jurisdictions and broadly construe the relevant clause in order to *provide* uninsured motorist coverage to innocent victims, not *exclude* it. In other words, the courts were promulgating the remedial purpose of the uninsured motorist statute.

Perhaps the Maryland case most applicable is *Goodwin v. Lumbermens Mutual Casualty Co.*, 199 Md. 121, 85 A.2d 759 (1952). In *Goodwin*, Raymond Goodwin drove his wife and five passengers to a wedding reception in his vehicle. Goodwin parked his vehicle on a one-way street with the driver's side to the curb. After the reception, four of the seven individuals returned to the parked vehicle. The first individual unlocked the right front door and was reaching inside the car to unlock the back door, when another automobile sideswiped the Goodwin vehicle and struck all four people. At the time of impact, the second of the four individuals was standing behind the first, holding the right front door open. The third had her hand on the handle of the right rear door, waiting for the first to unlock it. The fourth person was standing behind the second individual.

All four of the victims made claims under the medical payment provision of Goodwin's automobile policy, which provided coverage for bodily injury caused "while in or upon, entering or alighting from" the insured automobile. The insurer denied coverage arguing that the victims were not occupying the vehicle at the time of the accident. The trial

court held in favor of the insurer, but the Court of Appeals reversed, ruling that all four victims were occupying the vehicle when the accident occurred.

After conceding that the victims were neither "in" nor "alighting from" the vehicle, the court wrestled with the meanings of "upon" and "entering." In doing so, the Court recognized that a technical approach was difficult in that the terms were not synonymous, but sometimes covered the same situation. Ultimately, the court concluded that the first individual was "upon" the car as well as "entering" it. The court held that the rest of the individuals were "entering" it.

Although both parties in the instant case rely upon *Goodwin*, it clearly can be distinguished from the case at hand. Without analyzing *ad nauseam* the facts that distinguish *Goodwin* from the case at bar, we simply note that the parties apparently cited the case as it is the most factually similar Maryland case that could be located. Moreover, *Goodwin* is a good example of the Court of Appeals construing an occupancy clause in order to provide coverage, consistent with the remedial purpose of the uninsured motorist statute.

In *Day v. Coca–Cola Bottling Co., Inc.*, 420 So.2d 518 (La.App.2d Cir.1982), relied on by both appellant and appellee, plaintiff Day observed a fast-moving Chevrolet lose control and slide off the road as he was driving along an interstate highway. Day parked his vehicle on the shoulder of the highway and left the motor and windshield wipers going as he exited and walked toward the accident. As he approached, he saw that another accident was imminent as the Chevrolet was attempting to return to the interstate in reverse in the wake of an approaching Coca–Cola tractor trailer. The Coca–Cola truck applied its brakes, jack-knifed, glanced off the Chevrolet, and collided with Day's vehicle "sandwiching Day when Day was about two feet from the truck."

The Court of Appeals of Louisiana held that Day was occupying his insured vehicle for purposes of the uninsured motorist coverage, despite the fact that he had gotten out of his vehicle as the relationship of time and distance to the

vehicle was sufficiently close. Specifically, the court held that, for purposes of Day's uninsured motorist policy provision, he was insured while occupying the insured vehicle, defined in the policy as being in or upon or entering into or alighting from an insured vehicle. The court held that the phrase "while alighting from" must extend to some situations where the body of the driver of the insured vehicle has reached a point where it is not "in," "upon," or in "physical contact" with the insured vehicle. Furthermore, the court reasoned that, for purposes of uninsured motorist coverage, the driver of an insured vehicle who was "occupying" the insured vehicle, defined in the policy as "in or upon or entering into or alighting from" the vehicle, loses his insured status when time and distance factors are no longer proximate to the risk that a person exposes himself to while alighting from a vehicle.

Although *Day* seems to support appellee in the case at bar by broadly construing the meaning of "occupying" and "alighting from," that broad construction facilitated the remedial purpose of the uninsured motorist statute. In this case, however, a similarly broad construction would countermand that purpose.

In *Sentry Ins. Co. v. Providence Washington Ins. Co.*, 91 Wis.2d 457, 283 N.W.2d 455 (App.1979), a passenger in the rear seat of a parked automobile that he did not own, exited the vehicle on the driver's side and walked in front of the vehicle in order to get onto the sidewalk. While he was in front of the vehicle it was struck from behind by an uninsured motorist, causing it to move forward and pinning the victim between it and another parked car.

The struck automobile was insured by defendant Providence Washington Insurance Company (Providence). The victim owned an automobile insured by plaintiff Sentry Insurance Company, which paid its policy limits under its uninsured motorist coverage. Sentry then brought an action against defendant Providence, claiming that Providence had primary coverage because it insured the vehicle that was struck by the uninsured motorist. Providence contended at trial that there

was no coverage under its policy because the victim was not "occupying" the vehicle in question at the time of the collision. The trial court agreed. Under the policy "occupying" meant "in or upon or entering into or alighting from." On appeal, the Court of Appeals of Wisconsin noted that "[t]he Wisconsin Supreme Court has never required that a defendant have physical contact with an automobile before that person can be termed an 'occupant' under automobile insurance policies." *Sentry*, 283 N.W.2d at 456–57 (citations omitted). The court noted further that

> a person has not ceased "occupying" a vehicle until he has severed his connection with it i.e., when he is on his own without any reference to it. If he is still vehicle-oriented, as opposed to highway-oriented, he continues to "occupy" the vehicle. (citations omitted).

*Sentry*, 283 N.W.2d at 457 (quoting *Moherek v. Tucker*, 69 Wis.2d 41, 230 N.W.2d 148, 151 (1975), in which the Wisconsin court approvingly quoted *Allstate Ins. v. Flaumenbaum*, 62 Misc.2d 32, 46, 308 N.Y.S.2d 447 (1970)). *Sentry* is just another example of a court giving a broad construction to an occupancy clause in order to provide uninsured motorist coverage to an innocent victim in order to effectuate the remedial purpose of the uninsured motorist law.

▌ One thing that is clear from the cases analyzed above is that there is no bright-line construction for the type of occupancy clause we are called on to construe in the instant case. When determining whether there is uninsured motorist coverage based on a clause such as we have here, determinations must be made on a case-by-case basis, taking into account the usually overlapping meaning of the terms and the remedial purpose of the uninsured motorist statute. In *Sentry*, 283 N.W.2d at 457, the court quoted with approval *Whitmire v. Nationwide Mutual Ins. Co.*, 254 S.C. 184, 174 S.E.2d 391 (1970), a South Carolina case stating that

> "[a]lighting from" must . . . extend to a situation where the body has reached a point when there is no contact with the vehicle. *Where the act of alighting is completed is uncer-*

*tain. It must be determined under the facts of each case, considered in the light of the purpose for which coverage is afforded.*

(Emphasis added.)

■ In the instant case, notwithstanding our holding above that the trial court misconstrued the policy and applicable law, we also believe that appellant was not "in, on, getting into or out of" the truck provided for his "regular use." Appellant had exited the vehicle, closed the door behind him, and walked to the rear of the vehicle to ensure that the padlock on the rear doors was secure. His intention was to proceed to a nearby McDonald's restaurant for lunch. Upon hearing the squealing of a car making a sudden U-turn, appellant turned away from the truck. His attention was then focused on the wayward U-turning vehicle driven by Milano. After completing the U-turn, Milano backed into appellant's knee.

Appellant was no longer "getting out" of the truck—he had nearly, if not completely, concluded checking the padlock when his attention was drawn by the squealing of the U-turning car, causing him to change his orientation by turning around and looking to the right. Consequently, we find no merit in appellee's claims.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**