745 A.2d 444

**William B. BUSHEY, Personal Representative of the Estate of Miranda L. Bushey, et al.**

**v.**

**NORTHERN ASSURANCE COMPANY OF AMERICA, et al.**

**No. 16, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Feb. 3, 2000.

Michael J. Schreyer (Donahue, Seidman & Schreyer on the brief), Waldorf, for appellants.

Mark T. Mixter (John M. Oliveri on the brief), Baltimore, for appellee.

Argued before HOLLANDER, SONNER, and JOHN F. McAULIFFE (retired, specially assigned), JJ.

SONNER, Judge.

On January 25, 1997, a tragic head-on car accident caused the deaths of two sisters, Miranda and Susan Bushey. Susan was a high school senior when she was driving her grandfather's 1983 Cadillac on the day of the accident; Miranda was a high school sophomore. She attempted to pass a slower vehicle by crossing a double yellow line and was struck head-on by an oncoming vehicle. Susan died on that day and Miranda died from her injuries on January 30, 1997.

At the time of the accident, Nationwide Mutual Insurance Company had issued an insurance policy for the grandfather, Earl T. Weeks, under which Susan was a named insured. The policy limited liability coverage to $20,000 per person and

$40,000 per accident for bodily injuries, the statutory minimum in Maryland.

Appellants, William and Linda Bushey, the girls' parents, sued Northern Assurance Company of America ("Northern") and St. Paul Insurance Company in the Circuit Court for Charles County, individually and as personal representative of Miranda Bushey's estate, for underinsured motorist coverage. Northern has a commercial insurance policy for Mr. Bushey's automotive repair business.[1]  Appellants sought a declaratory judgment that the Northern policy provided uninsured motorist/underinsured motorist ("UM/UIM") benefits.  The circuit court found that the automobile was not a "covered vehicle" under Northern's policy and granted Northern's motion for summary judgment.

The appellants argue that Northern's insurance policy is not limited to covered vehicles and raise three issues on appeal, which we have reworded:

1. Did the circuit court misconstrue the uninsured motorist statute in determining that insureds may be excluded from coverage when not occupying a "covered vehicle"?

2. Did the circuit court misconstrue the personal and comprehensive coverage of the UM endorsement in determining that insureds may be excluded from coverage when not occupying a "covered vehicle"?

3. Did the circuit court err in concluding that the doctrine of parent/child immunity barred appellants' individual wrongful death claims? [2]

For the reasons discussed below, we affirm the judgment of the lower court.

---

1. A consent judgment for St. Paul Mercury Insurance Company was filed by all parties and St. Paul Mercury Insurance is not a party to this appeal.

2. Because there is neither a lower court opinion nor a complete transcript of the proceedings because of a computer malfunction, we must rely on the partial transcript and the parties' briefs to discern what occurred during the summary judgment hearing.

Northern issued a commercial insurance policy to "William B. Bushey t/a Bushey's Automotive"[3] that provides comprehensive coverage for appellant's automotive repair business. The policy is divided into numerous "sections," such as a property section that insures the automotive repair business's building, a crime section that insures against employee dishonesty, and a garage and dealers section. The garage and dealers section of the commercial policy is the section at issue.

In the garage and dealers section, using numerical codes, there is a "Coverages/Limits" section that allows uninsured motorist and underinsured motorist coverage to be elected for five types of cars:

22 = owned autos only,

23 = owned private passenger autos only,

24 = owned autos other than private passenger autos only,

26 = owned autos subject to a compulsory UM law, and

27 = specifically described autos.

For UM coverage, appellant checked number 26 (owned autos subject to a compulsory UM law). For UIM coverage, appellant checked number 26 and wrote in number 32, which covers "company use" vehicles with transportation tags.

The insurance policy has a "Maryland Uninsured Motorist Coverage" endorsement, which states:

B. WHO IS AN INSURED

1. You.

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". . . .

---

**3.** The Named Insured was amended to "William B. Bushey t/a Bushey's Automotive" on April 21, 1996. Throughout the policy, the Named Insured is inconsistently written as "Bushey's Automotive; William B. Bushey t/a," "Bushey's Automotive; Bill Bushey," "Bushey's Automotive," or "Bushey's Coastal Automotive."

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

The standard of review on appeal of a trial court's granting or denying a motion for summary judgment is whether the trial court was legally correct. *Young v. Allstate Ins. Co.*, 120 Md.App. 216, 221, 706 A.2d 650 (1998). We find that the trial court was correct in granting summary judgment to Northern.

### I. Maryland's Uninsured Motorist Statute

■ Appellants' first argument is that Maryland's UM statute does not permit an insured to be excluded from coverage if the insured is not in a "covered vehicle." Appellants contend that the statute applies to Northern's policy, even though it is a commercial insurance policy. Therefore, appellants argue the trial court erred in concluding that UM/UIM benefits cover only vehicles owned by Bushey Automotive or vehicles used in the business with transportation tags.

Appellee contends UM/UIM coverage under the policy extends only to owned vehicles subject to Maryland compulsory uninsured motorists law, *i.e.* the three vehicles listed in the policy, and vehicles used in the business with transportation tags. Appellee argues the insurance policy should be interpreted according to the parties' intentions at the time of contracting and that Mr. Bushey had the opportunity to purchase UM/UIM coverage for vehicles not owned by the business or otherwise used in the business, but he declined.

Appellants correctly state that the primary purpose of Maryland's UM statute, Insurance Article § 19–509, is to compensate innocent victims of automobile accidents who are unable to recover from uninsured or underinsured motorists. MD.CODE ANN., INS. § 19–509(1997); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 157, 416 A.2d 734 (1980); *Young v. Allstate Ins. Co.*, 120 Md.App. 216, 222, 706 A.2d 650 (1998). Appellants also correctly state that the statute lists two specific exclusions and the Court of Appeals has consistently held that additional exclusions are not permit-

ted.[4] *West Am. Ins. Co. v. Popa et al.,* 352 Md. 455, 474–75, 723 A.2d 1 (1998)(citing ten decisions by the Maryland Court of Appeals). However, appellants rely on cases that deal with personal, rather than commercial, insurance policies. Under appellants' contentions, the garage policy at issue would expose Northern to UM/UIM liability for all of Mr. Bushey's family members in any automobile accident, a result that would ignore the intention of the parties as well as the clear language of the policy.

■ The primary purpose in construing an insurance contract is to effectuate the intention of the parties. *Schuler v. Erie Ins. Exch. et al.,* 81 Md.App. 499, 505, 568 A.2d 873 (1990). "Where there is no ambiguity in an insurance contract the court has no alternative but to enforce the policy's terms." *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 171, 702 A.2d 767 (1997) (citing *Howell v. Harleysville Mut. Ins. Co.,* 305 Md. 435, 443, 505 A.2d 109 (1986)).

In this case, the parties' clear intention was to contract for a garage policy that insured covered autos only. We can see that from several unambiguous terms in the contract. First, in the "Coverages/Limits" section of the Garage and Dealers Section, appellant clearly understood that only those vehicles that were checked were covered for underinsured motorist

---

**4.** The statutory exclusions are listed as follows:

(f) Exclusions.—An insurer may exclude from the uninsured motorist coverage required by this section benefits for:

(1) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household; and

(2) the named insured, a family member of the named insured who resides in the named insured's household, and any other individual who has other applicable motor vehicle insurance for an injury that occurs when the named insured, family member, or other individual is occupying or is struck as a pedestrian by the insured motor vehicle while the motor vehicle is operated or used by an individual who is excluded from coverage under § 27–606 of this article.

MD.CODE ANN., INS. § 19–509(1997).

coverage because not only did he check number 26 (owned autos subject to UM law), but he wrote in number 32 (company use). Second, the UM endorsement emphasizes that UM coverage exists only for covered autos by explicitly stating that it modifies the Garage Coverage Form *"[f]or a covered 'auto'* licensed or principally garaged in, or 'garage operations' conducted in Maryland." Finally, it is clear the insurance was for business purposes. Under the "Driver Information" section of the Garage and Dealers Section, the insurance application states, "List all drivers, including family members that will drive company vehicles, and employees who drive own vehicles on company business." Only Mr. Bushey and two of his employees are listed.

Furthermore, appellants had the option to purchase insurance coverage that covered vehicles not owned by the automotive repair business, but opted not to purchase it. As the Court of Appeals stated:

> The fundamental problem with the Petitioners' arguments is that they are asking this Court to declare that they are entitled to something they did not elect to purchase.... [I]nsureds are only entitled to the coverage that they pay for, and no more.... The Petitioners had the option of purchasing higher uninsured/underinsured limits of coverage for each vehicle by paying the associated higher premiums. They chose not to do this for two of the three vehicles insured under the same policy, and now they seek the benefits of a bargain they did not make.

*Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 172, 174, 702 A.2d 767 (1997).

In a similar case, *Schuler v. Erie Ins. Exch., et al.,* 81 Md.App. 499, 504, 568 A.2d 873 (1990), this court considered whether the injured party, the spouse of the owner of a car insured by the owner's employer, was an insured under the commercial insurance policy at issue for purposes of UM and personal injury protection (PIP) coverage. The insurance company argued that only covered vehicles involved in accidents were insured under the policy, whereas the injured

party argued that the owners of the cars and their spouses and relatives were covered despite the fact that the employer paid for the insurance. *Id.* at 502, 568 A.2d 873. A plain reading of the parties' insurance policy led this Court to conclude that the injured spouse was not an insured under the policy. *Id.* at 508, 568 A.2d 873. However, this Court also rejected the insurance company's argument that only covered vehicles were insured because the language of the policy did not so limit the coverage. *Id.* at 506–07, 568 A.2d 873.

In contrast to *Schuler*, the clear language of the policy at issue limits UM coverage to covered autos. The parties clearly understood they were contracting only for covered autos. We therefore reject appellants' argument that the policy's language does not restrict coverage only to vehicles used in the context of the Busheys' garage operations.

## II. The Uninsured Motorist Endorsement

■ Appellants contend the definitions of an insured in the UM endorsement extends coverage to family members even when not in covered autos. The UM endorsement defines an insured as:

B. WHO IS AN INSURED

1. You.

2. *If* you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". . . .

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(Emphasis added). Appellants interpret this definition of an insured to mean that Miranda was an insured and covered under the policy regardless of what vehicle she was traveling in because there is no language in the first two definitions that specifically limits coverage to accidents in covered vehicles. Appellees contend that a plain reading of the UM endorsement and the policy as a whole shows that Miranda is not an

insured at all and that UM/UIM coverage is limited only to covered autos.

We agree with the trial court in its reading of the UM endorsement that the *commercial* insurance policy insured Bushey Automotive, which is a business entity, not an individual. Therefore, the second definition does not apply and family members are not insured under this commercial policy. *See Jensen v. United Fire & Cas. Co.*, 524 N.W.2d 536 (Minn.Ct.App.1994)(holding daughter was not insured under commercial insurance policy because the named insured was a business, not an individual).

Furthermore, as described above, the policy as a whole embraces covered autos only. In fact, even the UM endorsement states that it modifies the policy for covered autos only. The first sentence of the UM endorsement states, *"For a covered 'auto'* licensed or principally garaged in, or 'garage operations' conducted in Maryland, this endorsement modifies insurance provided under the [garage coverage form]."

Appellants primarily rely on *Young v. Allstate Ins. Co.*, 120 Md.App. 216, 706 A.2d 650 (1998), for the proposition that the proper analysis in determining UM coverage begins and ends with the question of who is an insured, not whether an insured was in a covered auto. In *Young,* because the policy at issue had no limiting language regarding covered autos, this Court held that the insured was covered. *Id.* at 224, 706 A.2d 650. However, in this case, we find that the policy has limiting language that explicitly states that UM/UIM coverage applies only to covered autos. Thus, we conclude that Miranda was not an insured.

We note that there is a dispute regarding whether Miranda met the definition of "family member" because she stayed with her grandparents during the week and may not be considered "a resident of your household." However, this factual dispute is not material to the outcome of the case.

### III. Parent-child Immunity

The circuit court concluded the doctrine of parent/child immunity barred appellants' individual wrongful

death claims. Northern argued below that under the underinsured motorist provision, the appellants have to be legally entitled to recovery. Therefore, the parents would have to sue their daughter, Susan, and prove she was negligent, which is barred by parent/child immunity.

Appellants argue that there is no authority in Maryland saying a parent cannot sue a child. We disagree. The Court of Appeals has applied the parent-child doctrine to preclude claims by a minor child against the parent as well as claims by a parent against the minor child. *See Schneider v. Schneider,* 160 Md. 18, 152 A. 498 (1930)(mother could not sue her minor child for injuries sustained in an automobile accident in which she was a passenger and the child was the driver); *Latz v. Latz a/k/a Schafer,* 10 Md.App. 720, 272 A.2d 435, *cert. denied,* 261 Md. 726 (1971)(father may not sue his minor child individually or as administrator of his wife's estate where mother was killed while a passenger in an automobile accident in which her minor daughter was the driver). In *Schneider,* the Court of Appeals explained why a parent may not sue the minor child:

> The obstacle to the mother's recovery . . . is in the fact that she sues a minor son, of whom she, jointly with the father, is the natural guardian. . . . The ordinary position of parent and guardian of a minor, and that of plaintiff seeking to recover from the minor, are positions which cannot both be occupied by one person at one and the same time. . . . [A minor is] dependent upon a parent to provide for him . . . judgment and care. . . . In a suit against him he would ordinarily depend upon his parents to procure him an attorney, for he cannot appoint one. . . . [O]ne person cannot at the same time occupy the position of parent and natural guardian . . . and the position of plaintiff demanding damages from the child at law.

*Schneider,* 160 Md. at 21–23, 152 A. 498.

Appellants argue that even if Maryland precludes claims by parents against their minor children, in this case, the parents should be permitted to sue because the liable party is a

deceased child, and the source of compensation is an insurance company. Therefore, protecting the sanctity of the family is inapplicable in this instance.

■ We decline to allow a parent to sue a deceased child merely because the source of potential compensation is an insurance company. The Court of Appeals addressed this specific issue in *Frye v. Frye*, 305 Md. 542, 562–67, 505 A.2d 826 (1986), and *Warren v. Warren*, 336 Md. 618, 626–28, 650 A.2d 252 (1994), and declined to abrogate the parent-child immunity doctrine despite compulsory liability insurance laws. Rather, Maryland's highest court concluded that excluding motor torts from the parent-child immunity rule because of compulsory motor vehicle liability insurance would have an impact upon the insurance scheme and is therefore a matter for the Maryland legislature, not the judiciary. *Warren*, 336 Md. at 627–28, 650 A.2d 252; *Frye*, 305 Md. at 566–67, 505 A.2d 826.

■ Whether the parent-child immunity doctrine applies in cases where the liable party is a deceased minor child appears to be one of first impression in Maryland. There have been only three exceptions to the parent-child immunity doctrine, none of which apply to this case. *Eagan v. Calhoun*, 347 Md. 72, 75, 698 A.2d 1097 (1997)(citing *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951), in which the court allowed a child to sue her father's estate for cruel and inhuman treatment; *Waltzinger v. Birsner*, 212 Md. 107, 128 A.2d 617 (1957), in which an emancipated child could sue his parent after reaching the age of majority; and *Hatzinicolas v. Protopapas*, 314 Md. 340, 550 A.2d 947 (1988), in which a child could sue his parent's business partner for negligence).

The parent-child immunity doctrine is based on the public policy to preserve the peace and harmony of the family. *Frye*, 305 Md. at 552, 505 A.2d 826. In *Warren v. Warren*, Judge Karwacki listed three additional reasons for the doctrine: the preservation of parental discipline and control, the prevention of fraud and collusion, and the threat that litigation between parents and children may deplete family resources. *Warren*,

336 Md. at 625, 650 A.2d 252. All of these justifications for the doctrine emphasize the family unit rather than the individual parent or child. Even though Susan, the liable party, is deceased, allowing appellants to sue their daughter for negligence goes against the public policy of preserving the peace and harmony of the family.

The *Eagan* court specifically declined to allow for an immunity exception to acts of negligence, such as automobile accidents, because:

> although such tragedies may well put a serious strain on some of the family relationships, they do not generally destroy a parent-child relationship. A parent who negligently causes the death of his or her spouse or of a child can still maintain a parent-child relationship; *the family, even in its grief, can survive.*

347 Md. 72, 83, 698 A.2d 1097 (1997)(emphasis added). We feel constrained to follow that reasoning and do so in affirming the court below.

**JUDGMENT AFFIRMED.**

**APPELLANTS TO PAY COSTS.**