**Sherry Ann GORHAM, Plaintiff,**

v.

**GUIDANT MUTUAL INSURANCE COMPANY, et al.,
Defendants.**

**No. Civ.AMD 99–1442.**

United States District Court,
D. Maryland.

Jan. 20, 2000.

Thomas J. Schetelich, Peter Joseph Basil, Ferguson, Schetelich & Heffernan, P.A., Baltimore, MD, for plaintiff.

Deborah S. Kane, DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP, Lanham, MD, for defendants.

## MEMORANDUM

DAVIS, District Judge.

### I. INTRODUCTION

In this action, here under the diversity of citizenship jurisdiction and arising under the law of Maryland, plaintiff Sherry Ann Gorham has sued Guidant Mutual Insurance Company and its predecessors and successors in interest (hereafter "Guidant"), the company that issued an automobile liability policy to her employer. Gorham was seriously injured in an accident caused by an "underinsured motorist." She alleges, therefore, that under the circumstances of this case, she is entitled to recover compensation pursuant to the uninsured/underinsured motorist provisions of the Guidant policy. Guidant has denied coverage.

■ Discovery has concluded; pending before the court are the parties' cross motions for summary judgment on the issue of whether Gorham was indeed covered under the Guidant policy. No hearing is necessary. For the reasons stated herein, I am persuaded that it is highly likely that if it were confronted with the record before me, the Maryland Court of Appeals would conclude that, as a matter of law, at the time of the accident, Gorham was covered by the uninsured/underinsured provisions of the Guidant policy. Thus, I shall grant Gorham's motion and deny Guidant's motion.[1]

---

1. Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be

## II. FACTS

There exists no genuine dispute of material fact. Gorham was employed during 1997 as a teacher by the Grace Bible Baptist Church and Christian School ("Grace"). Her husband, John Gorham ("J. Gorham"), was an Assistant Pastor at the church, and her sister, Cindy Johnson ("Johnson"), was also a teacher at the church school. Grace is the named insured in the policy at issue.

In the early morning hours of April 11–12, 1997, Gorham, J. Gorham and Johnson were returning to Maryland from a trip to Georgia. The purpose of the trip had been twofold: to recruit teachers for the church school and to retrieve a van owned by Grace ("the church van") that had broken down on a previous trip to Georgia. The church van is insured under the Guidant policy.

On the return trip to Georgia, the trio traveled in a minivan owned by the Gorhams. Once they retrieved the church van and finished with their other business, the three travelers headed home to Maryland by proceeding north on I–85. J. Gorham was driving the church van. Gorham and Johnson, who was driving, were following in the minivan owned by the Gorhams.

After several hours on the road, and shortly after crossing into Virginia from North Carolina on I–85, Johnson became concerned that J. Gorham was driving somewhat erratically and perhaps was getting sleepy. She signaled J. Gorham to pull over.

J. Gorham pulled the church van off to the side of the highway; Johnson pulled off not far behind. Gorham got out of the minivan to discuss with her husband whether he was sleepy. When he did not voice a strong protest to that suggestion, she told him that she would drive the church van until they found a place to sleep for the night, which had been their plan at the outset.

To make J. Gorham comfortable for a nap in the church van pending their arrival at a motel, Gorham began unloading pillows and blankets from the minivan and placing them into the church van. Prior to the accident described below, she had walked back to, and had perhaps been partially inside of, the church van at least once to deposit these items in the rear of the church van.

At around that time, two local law enforcement officers arrived on the scene to

drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id.* at 587, 106 S.Ct. 1348. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433

(1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Shealy*, 929 F.2d at 1012.

When a court is confronted with cross-motions for summary judgment, as is the case here, the court must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed.1998). In the instant case, I agree with the parties that only an issue of law is presented by the undisputed facts of record.

ask if there were any problems. The Gorhams stated that all was fine and that they were simply switching drivers. The officers stated on deposition that they observed and talked to the Gorhams while the latter were standing somewhere near the sliding door of the minivan on the passenger side.

Gorham testified on deposition that after she had finished loading pillows and blankets into the church van she returned to the minivan to retrieve her backpack. Her backpack contained her eyeglasses, which she needed for driving. While Gorham was retrieving her backpack from the minivan, and only seconds after the officers had pulled away from the scene, James Manning, a northbound motorist who, according to a post accident urinalysis, was operating his car under the influence of several narcotic substances, left the travel lanes of the highway, entered the shoulder, and slammed into the rear of the minivan, pushing the minivan into the church van.

Gorham was struck as she stood near the minivan in the course of retrieving her backpack; she was thrown a number of feet away from the van. She sustained serious injuries. The personal liability limits of Manning's policy have been tendered to Gorham. Gorham seeks additional compensation under the underinsured motorist coverage of the Guidant policy at issue in this case.

### III. INSURANCE POLICY PROVISIONS

For purposes of the motions for summary judgment, the relevant uninsured/underinsured motorist provisions of the policy are as follows:

A. COVERAGE: 1. [Insurer] will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured"....

B. WHO IS AN INSURED: 1. You [Grace] ... 3. Anyone "occupying" a covered "auto"....

F. ADDITIONAL DEFINITIONS: 2. "Occupying" means in, upon, getting in, on, out or off.

The issue presented by the motions is whether, as a matter of law, Gorham was (or was not) "occupying" the church van at the time of the accident. The parties agree that the only portion of the policy definition of "occupying" relevant here is "getting in." Thus, if at the time of the accident Gorham was "getting in" the church van, then she was "occupying" the church van, and she is therefore entitled to coverage under the underinsured motorist provisions of the Guidant policy. On the other hand, if Gorham was not "getting in" the church van when she was injured, then she was not "occupying" the church van, and consequently, she was not covered by the underinsured motorist provisions of the policy.[2]

---

2. Gorham makes a second argument, as well. She contends that as an employee of Grace acting within the scope of her employment at the time of the accident, she was covered by the uninsured motorist provisions of the Guidant policy as the alter ego of Grace, which, as a corporation, cannot itself suffer "bodily injury." The Supreme Court of Ohio, in a sharply divided 4–3 decision, recently construed a business auto policy issued to a corporation in just this manner. *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). In part because, unlike Ohio, Maryland does not construe ambiguous terms in insurance policies against an insurer, *compare Scott–Pontzer*, 710 N.E.2d at 1119 ("[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured" (alterations in original; internal quotation omitted)), *with Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 625 A.2d 1021, (1993) ("Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer."), and in part because of the dearth of any Maryland authority for such an expansive interpretation of an insurance policy issued to a corporate insured, I reject Gorham's contention that she is entitled to coverage as Grace's alter ego.

## IV. APPLICABLE LAW

The parties agree that Maryland law is controlling in this case. Only two Maryland cases have examined the meaning of so-called occupancy clauses similar to that at issue here. Those decisions point the way to the correct outcome, however, they do not, singly or in combination, dictate the correct result; indeed, both Gorham and Guidant cite them in support of their opposing views of the case. Accordingly, as described below, I shall employ a mode of analysis which I believe is likely to find acceptance by the Maryland Court of Appeals when that court is presented with an analogous issue. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *McClung v. Ford Motor Co.*, 472 F.2d 240 (4th Cir. 1973) (*per curiam*); *Taylor v. Lotus Development Corp.*, 906 F.Supp. 290, 296 (D.Md.1995).

The first Maryland case, *Goodwin v. Lumbermens Mut. Cas. Co.*, 199 Md. 121, 85 A.2d 759 (1952), did not involve an uninsured motorist provision but involved, instead, a medical payments provision under an automobile policy. The relevant policy language afforded coverage for one who was injured "while in or upon, entering or alighting from the automobile." *Id.* at 760.

The facts at the non-jury trial in *Goodwin* showed that the four plaintiffs were in the process of entering a vehicle parked with its driver's side at the curb. At the time of the accident, they were standing in the street alongside the passenger side of the car. One of them had unlocked the front passenger door, and was apparently reaching or leaning into the car to pull the tab on the right rear door lock so as to enable others to climb in. The other three plaintiffs were standing in close proximity to the passenger side of the car; at least two of the other three plaintiffs were in actual physical contact with the car. *See id.* at 760–61.

A vehicle traveling on the roadway left its lane of travel and struck all four plaintiffs and the vehicle as they prepared to enter the parked car. The insurer denied coverage under the medical payments provision of the policy covering the parked car. The plaintiffs filed suit against the insurer. The trial court held in favor of the insurer, concluding that none of the plaintiffs was "in," "upon" or "entering" the vehicle within the contemplation of the occupancy clause contained in the policy.

The Maryland Court of Appeals reversed. The court noted that "[a] technical approach to the problem necessarily leads to difficulty," *id.* at 763, and eschewed such a tack. Ultimately, the court held on the facts that the plaintiff who was reaching or leaning in to unlock the rear passenger-side door was "upon" the car, and that, in any event, the four plaintiffs "were all in process of getting in the car so far as they were able under the circumstances," *id.* at 764, and that therefore medical payments coverage under the policy of insurance was available. *Id.*

The only other case in which a Maryland appellate court has considered an "occupancy" clause under an automobile policy is *Young v. Allstate Ins. Co.*, 120 Md.App. 216, 706 A.2d 650 (1998). In *Young*, plaintiff, an employee of the District of Columbia, had parked a vehicle, a step van provided to him for his regular use by his employer, on a public street in order to take a meal break at a nearby restaurant on the same side of the street. *Id.* at 651–52. After parking and getting out of the step van, he walked to the rear of the vehicle to check that the padlock securing the rear doors of the van was secure. *Id.*

While standing at the rear doors of the van, Young's attention was drawn to a motorist who made an abrupt u-turn nearby. After the u-turning motorist had completed his u-turn, he struck Young, causing injury. The motorist was uninsured. Thus, Young brought an action seeking compensation under the uninsured motorist provisions of his personal auto policy against his own insurance company, which had issued an automobile policy covering his personally-owned vehicle. *Id.* at 651.

The occupancy clause in *Young* was substantially identical to that involved here: an "insured" for purposes of the uninsured motorist coverage included one who was injured by an uninsured motorist "while in, on, getting into or out of an insured auto." *Id.* at 652. The trial court granted summary judgment to the insurer. *Id.* at 651. In so doing, the trial court sustained the insurer's contention that because Young was using a vehicle, i.e., occupying the step van, which was available for his "regular use" but which he did not own, the vehicle was not an "insured auto" by virtue of a policy exclusion applicable to the uninsured motorist coverage in Young's policy. Young had argued that he was a "pedestrian" at the time of the accident, i.e., that he was not "occupying" the step van as he stood at the rear of the vehicle checking the padlock.

The Maryland Court of Special Appeals ultimately reversed the trial court on other grounds.[3] Nonetheless, it proceeded to consider whether the trial court's interpretation and application of the occupancy clause was erroneous under the facts presented. The Court of Special Appeals concluded that, based on the facts presented, the trial court had not erred in its interpretation and application of the occupancy clause.

The court agreed that "most of the cases construing similar clauses seem to support [the insurer's] proposed construction [that Young was 'occupying' the step van when he was struck by the u-turning driver while standing at its rear doors checking the padlock]." Nevertheless, in distinguishing those cases, the court emphasized that

> most, if not all, are from other jurisdictions and broadly construe the relevant clause in order to *provide* uninsured motorist coverage to innocent victims, not *exclude* it. In other words, the courts

were promulgating the remedial purpose of the uninsured motorist statute.

*Id.* at 657 (emphases in original). The court described *Goodwin* as "a good example of the Court of Appeals construing an occupancy clause in order to provide coverage, consistent with the remedial purpose of the uninsured motorist statute." *Id.* at 658.

After examining several cases from other jurisdictions in which courts fashioned broad constructions of occupancy clauses where to do so effectuated the remedial purposes of uninsured motorist provisions, *id.* at 658–59, the court reasoned that at the time Young was struck by the u-turning motorist, he

> was no longer getting out of the truck— he had nearly, if not completely, concluded checking the padlock when his attention was drawn by the squealing of the U-turning car, causing him to change his orientation [from the nearby restaurant] by turning around and looking to the right.

*Id.* at 659.

Like all the courts that have addressed the issue of occupancy clauses, *Young* also emphasized that "there is no bright-line rule.... When determining whether there is uninsured motorist coverage based on a clause such as we have here, determinations must be made on a case-by-case basis...." *Id.* Furthermore, in that case-by-case analysis, courts should "tak[e] into account the usually overlapping meaning of the terms and the remedial purpose of the uninsured motorist statute." *Id.See generally* Robert Roy, Annotation, *What Constitutes "Entering" or "Alighting From" Vehicle Within Meaning of Insurance Policy, or Statute Mandating Insurance Coverage,* 59 A.L.R.4th 149 (1988).

■ A cogent synthesis of the principles guiding courts in applying occupancy clauses may be derived from the Supreme

---

**3.** The court held that the policy exclusion relied on by the insurer, which excluded from the definition of "insured auto" an unowned vehicle made available for "regular use" of the insured, in that case Young, was not an authorized exclusion under the Maryland uninsured motorist statute. *See* 706 A.2d at 652–57.

Court of Tennessee's decision in *Tata v. Nichols*, 848 S.W.2d 649 (Tenn.1993), and the Supreme Court of Pennsylvania's decision in *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). *Tata* conducted a careful review of the many approaches to this issue employed by courts in many states. *See id.* at 650–53 (citing and summarizing numerous cases in which "occupancy" was found, including *Contrisciane* ). The court concluded that in applying occupancy clauses to the infinite number of scenarios which arise in modern life, most courts that are concerned, as are the courts of Maryland, with effectuating the remedial purposes of an uninsured motorist statute, do and should take careful account of the following factors:

(1) whether there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) whether at the time of the encounter with the uninsured motorist, and regardless of whether the claimant was in actual physical contact with the insured vehicle, the person seeking coverage was in reasonably close geographic and temporal proximity to the insured vehicle;

(3) whether the claimant was "vehicle-oriented" rather than highway– or sidewalk–oriented at the time of the accident;

(4) whether the claimant was engaged in a transaction essential to the use of the insured vehicle at the time of the encounter with the uninsured motorist; and

(5) whether, within "rational limits" dictated by the facts of the case, the claimant intended to initiate or maintain "a certain relationship with the insured car at the time of the accident."

*See id.* at 651–53.[4]

The court in *Tata* found in favor of the plaintiff seeking coverage. He had pulled over on the side of an interstate highway to assist a friend whose car had broken down. While he was in the course of connecting battery jumper cables between the two insured cars, he suffered serious injuries when an uninsured motorist collided with one of the insured cars. The court held that he was "occupying" either car, in the sense of being "upon" both cars. *See Tata*, 848 S.W.2d at 653. *See also Kreuser v. Heritage Mut. Ins. Co.*, 158 Wis.2d 166, 461 N.W.2d 806, 809 (App.) (claimant, who was waiting approximately 10 feet away from insured car as car approached the

---

4. The court relied heavily on *Contrisciane*, which in turn had relied on a case from Washington, *Rau v. Liberty Mut. Ins. Co.*, 21 Wash.App. 326, 585 P.2d 157, 162 (1978). In *Rau* the issue presented was whether a truck driver who left his truck and crossed to the other side of the road to obtain directions for making a delivery, and who was struck by an uninsured motorist while returning to his parked truck was "using" the truck at the time of the accident. Adopting the *Rau* formulation as relevant to the interpretation of occupancy clauses, the Pennsylvania court reasoned as follows in *Contrisciane:*

> Therefore, we hold that when a person is engaged in the lawful use of an insured vehicle, he will be considered to be "occupying" that vehicle within the meaning of the policy, provided he can meet the following criteria:
>
> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;

> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

473 A.2d at 1009 (holding that plaintiff's decedent, who was hit and killed by an uninsured motorist as he stood in roadway alongside police vehicle as police officer seated in police car completed an accident report in respect to an accident in which decedent had been involved moments before he was hit, was "occupying" his employer's insured vehicle which he had been driving and which, when he was hit by the uninsured motorist, was parked 97 feet away from the police vehicle).

curb so that she could enter it, and who was struck by speeding motorcycle careening off insured car, was "occupying" car under policy), *cert. denied,* 464 N.W.2d 424 (Wisc.1990); *Wickham v. Equity Fire & Cas. Co.,* 889 P.2d 1258 (Okla.App.1994) (motorist who stopped and assisted insured to change flat tire, and who had contact with interior of trunk of the insured's car while retrieving tools from trunk, and who was struck by uninsured motorist while kneeling at tire, was "occupying" car under policy, notwithstanding the absence of any intention on claimant's part of ever getting into passenger compartment of car).

The approach derived from *Tata* and *Contrisciane* offers a sensible structure for the task at hand. It takes into account, in one multifaceted test, many of the factors held to be critical in the analysis of occupancy clauses in uninsured motorist provisions by a variety of courts. As the submissions of the parties here bear out, the cases on this issue are intensely fact-driven. Results in favor of either party can be easily supported. The above test gives coherence to an area of the law where the use of a variety of tests creates the unseemly appearance of arbitrary decision making.

The test I apply here is especially likely to find acceptance before the Maryland Court of Appeals because it avoids the construction of occupancy clauses in an overly-technical manner. *See Goodwin,* 85 A.2d. at 763 ("[A] technical approach to the problem necessarily leads to difficulty....."). It recognizes that numerous, commonsense factors are relevant to the occupancy question. Moreover, the test is consonant with the spirit, emphasized in *Young,* that animates the evaluation of uninsured motorist claims, i.e., that Maryland courts should "tak[e] into account ... the remedial purpose of the uninsured mo-

torist statute." *Young,* 706 A.2d at 658; *see also Clay v. GEICO,* 356 Md. 257, 739 A.2d 5, 9–10 (1999) (reiterating the remedial purpose of uninsured motorist insurance statute).

## V. ANALYSIS

■ Applying the above test to the undisputed facts in the case at bar, I am persuaded that summary judgment in favor of Gorham is warranted.

Under the first factor, "whether there is a causal relation or connection between the injury and the use of the insured vehicle," the facts are clear. The ongoing safe use of the church van was largely the *sine qua non* to the happening of the accident which caused Gorham's severe injuries. The sole aim of the travelers' in pulling over on that stretch of I–85 at that time of night was to determine whether J. Gorham could continue safely to drive the church van. Moreover, Gorham was in the process of acquiring control of the church van for purposes of driving it in place of J. Gorham. Thus, the use of the church van does not bear merely a tangential or coincidental connection or causal relation to her injury; rather, a legitimate concern for the safe operation of the church van gave rise directly to her presence in harm's way at the time of the accident.

Under the second factor, "whether at the time of the encounter with the uninsured motorist, and regardless of whether the claimant was in actual physical contact with the insured vehicle, the person seeking coverage was in reasonably close geographic and temporal proximity to the insured vehicle," the undisputed evidence supports the conclusion that Gorham was within reasonable propinquity to the church van at the time of the accident. That is to say, she was "reasonably close" to it within the contemplation of the occupancy clause.[5]

5. Gorham states in her deposition that she had walked between the minivan and the church van at least once and was going to return to it. *See* Gorham Tr. at 66–69. It appears from Officer Edmond's deposition that the vans may have been as far away from

each other as 15–20 yards, *see* Edmonds Tr. at 21 (stating that the Gorhams were "15 to 20 yards away," though not indicating if this is from the officer in his car or from each other). On the other hand, the two vehicles may have been as close to one another as one car

Under the third factor, "whether the claimant was 'vehicle-oriented' rather than highway– or sidewalk-oriented at the time of the accident," the evidence conclusively supports Gorham. In this inquiry, the court should consider "the nature of the act engaged in at the time of the injury and the intent of the person injured." *Tata*, 848 S.W.2d at 643, 652 (citing *Kreuser*, 461 N.W.2d at 809). The record establishes, manifestly, that Gorham was vehicle–oriented. She was in the course of retrieving her eyeglasses for the purpose of driving the church van. Equally significant, Gorham had actually been in physical contact with the church van (to place pillows and blankets there for J. Gorham) moments before she returned to the minivan to retrieve the backpack containing her glasses.[6] She was not in any sense "highway-oriented."

Under the fourth factor, "whether the claimant was engaged in a transaction essential to the use of the insured vehicle at the time of the encounter with the uninsured motorist," the evidence establishes that the Gorhams and Johnson had stopped their vehicles to determine whether J. Gorham was still capable of driving. It also establishes without contradiction that they made the decision that J. Gorham was not capable of driving, or at least, that Gorham should and would drive in his stead. The inference is inescapable that they were acting in the interest of their own safety and the safety of others on the highway. Furthermore, they were acting to avoid property damage harmful to, and a risk of liability chargeable to, the insured, Grace. Accordingly, construing the word "transaction" at a level of high generality, the facts support Gorham's contention that she was engaged in a "transaction essential to her use of the insured vehicle at the time of the accident." *Cf. Kentucky Farm. Bur. Ins. Co. v. McKinney*, 831 S.W.2d 164, 167 (Ky.1992) (suggesting that plaintiff's directing traffic arguably saved the insurance company from liability because insured was parked in the road barring the way of oncoming traffic).

If, on the other hand, the "transaction" is considered at a more specific level of analysis, namely, Gorham's attempt to retrieve her eyeglasses for the purposes of driving the church van safely, then the

---

length. *See* Edmonds Tr. at 31 (responding at top of page to the question "... van?" with response, "I'm going to say about a car length," though it is not entirely clear if this reflects the distance between the two vans or between the law enforcement vehicle and the vans). The diagram on the police accident report indicates that Gorham was near the front door of the minivan when the accident occurred and, though clearly not drawn to scale, indicates that the minivan and the church van were no more than a vehicle length apart.

In any event, accepting the facts as Guidant urges them and as Gorham's deposition indicates, Gorham would be placed near both the minivan (which was actually knocked into her) *and* the church van at the time of the accident. There is no "bright-line" test for this factor and it is not necessary that the claimant actually be touching the car. *See* n. 4, *supra*.

**6.** Thus, Guidant's contention that at the time of the collision Gorham was "oriented" towards the minivan is inapposite and thus, unpersuasive. Even though Gorham was retrieving her eyeglasses at the time of the accident, this act was solely for the purpose of driving the church van. Moreover, Gorham had not severed her relationship with the church van which arose from the overall sequence of events and which was signified by her depositing pillows and blankets in the church van. *Cf. Young*, 706 A.2d at 659 (" '[A] person has not ceased "occupying" a vehicle until he has severed his connection with it, i.e., when he is on his own without any reference to it. If he is still vehicle-oriented, as opposed to highway-oriented, he continues to "occupy" the vehicle.' ") (quoting with approval *Sentry Ins. Co. v. Providence Washington Ins. Co.*, 91 Wis.2d 457, 283 N.W.2d 455, 457 (App.1979)). Since Gorham was retrieving her bag for the purpose of obtaining her eyeglasses for the purpose of driving, as a matter of law she was "vehicle-oriented" for purposes of the occupancy clause analysis. If she were not, under the uncontradicted facts in the record, she would not have had any reason to obtain her backpack and eyeglasses. *Compare Kreuser*, 461 N.W.2d at 809 (holding that woman waiting for car to pick her up at curb was "vehicle-oriented.").

point is made even more forcefully that the "transaction" was "essential" to her imminent use of the church van. Thus, this factor weighs heavily in favor of Gorham.

Finally, as to the fifth factor, "whether, within 'rational limits' dictated by the facts of the case, the claimant intended to initiate or maintain a 'certain relationship with the insured car at the time of the accident,'" the facts of this case militate strongly in favor of Gorham. It is no overstatement to observe that Gorham's entire purpose—after she had quizzed J. Gorham as to his ability to drive—was to establish "a certain relationship" with the church van, namely to drive it safely to a motel where the traveling party would retire for the balance of the night. Her inchoate, incipient contact with the church van, arising from her *intent* to drive it, was actualized when she deposited the pillows and blankets therein, and before she retreated to the minivan to retrieve her backpack and thus her eyeglasses. In this light, it is clear that at the time Manning slammed into the minivan which in turn struck Gorham and then the church van, Gorham's contact and "relationship" with the church van was not remotely "coincidental."

## VI. CONCLUSION

Based on the above analysis, the undisputed facts present a compelling case and mandate a grant of partial summary judgment in favor of Gorham on the issue of coverage. At the time of the accident, giving due regard for the remedial purpose of Maryland's uninsured motorist statute, Gorham was "in process of getting in the [church van,] so far as [she was] able under the circumstances" as they existed at that time. *See Goodwin,* 85 A.2d at 764. Guidant's motion for summary judgment shall be denied. An order follows.