2003 SD 130

Roy J. RODEN, Plaintiff and Appellee,

v.

GENERAL CASUALTY COMPANY
OF WISCONSIN, Defendant
and Appellant,

and

Wayne Anderson, Defendant.

No. 22236.

Supreme Court of South Dakota.

Argued Oct. 8, 2002.

Reassigned July 29, 2003.

Decided Oct. 29, 2003.

Steven C. Beardsley, Ted L. McBride of Beardsley, Jensen & Von Wald, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

William G. Beck of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

GILBERTSON, Chief Justice (on reassignment).

[¶ 1.] Roy Roden (Roden) filed a claim against General Casualty for underinsured motorist's benefits. General Casualty moved for summary judgment, and Roden filed a cross-motion for partial summary judgment. The trial court denied General Casualty's motion and granted Roden partial summary judgment. General Casualty appeals, and we now affirm.

## FACTS AND PROCEDURE

[¶ 2.] On July 9, 1999, Roden, an employee of Fiber Logic, was standing beside his supervisor's pickup parked on North Highway 79. At this time, a vehicle operated by Wayne Anderson struck Roden. As a result Roden was hospitalized for six weeks and sustained permanent physical injuries and had extensive medical expenses.

[¶ 3.] Roden settled his claim against Wayne Anderson and his insurer. Next, Roden filed a claim against his employer's insurance company, General Casualty, for underinsured motorist benefits. In his claim against General Casualty, Roden contends he was occupying the vehicle and is therefore entitled to underinsured motorist coverage.

[¶ 4.] Both Roden and General Casualty filed cross Motions for Summary Judgment on the issue of whether he is covered by the insurance. The trial court denied General Casualty's Motion for Summary Judgment and granted Roden Partial Summary Judgment on the issue of coverage. General Casualty appeals the following issues:

1. Whether Roy Roden was occupying the pickup insured by General Casualty for purposes of underinsured motorist coverage.

2. Whether the trial court erred in granting Roden's Motion for Summary Judgment on the issue of coverage.

## STANDARD OF REVIEW

[¶ 5.] Our standard of review for the grant or denial of summary judgment is well settled. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). Thus, "[w]e will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided." *Holzer v. Dakota Speedway*, 2000 SD 65, ¶ 8, 610 N.W.2d 787, 791 (citing *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987)). We view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. *Id.* (citing *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D. 1990)). In addition, the moving party has the burden of clearly demonstrating "an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Dakota Speedway*, 2000

SD 65, ¶ 8, 610 N.W.2d at 792, (citing *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968)).

[¶ 6.] The construction of a contract is a question of law that is reviewed de novo. *Westfield Ins. Co., Inc. v. Rowe ex rel. Estate of Gallant*, 2001 SD 87, ¶ 4, 631 N.W.2d 175, 176 (citing *Sawyer v. Farm Bureau Mut. Ins. Co.*, 2000 SD 144, ¶ 13, 619 N.W.2d 644, 648). "This includes determining whether an insurance contract is ambiguous." *National Sun Industries, Inc. v. South Dakota Farm Bureau Ins. Co.*, 1999 SD 63, ¶ 7, 596 N.W.2d 45, 46 (citations omitted).

## ANALYSIS AND DECISION

[¶ 7.] **1. Whether Roy Roden was occupying the pickup insured by General Casualty for purposes of underinsured motorist coverage.**

[¶ 8.] The trial court ruled as a matter of law that Roden occupied the vehicle at the time of the accident. General Casualty, however, asserts that the term "occupying" is unambiguous and, therefore, this Court should interpret the term narrowly. Given a narrow interpretation of the term, General Casualty contends that Roden was not occupying the vehicle within the meaning of the policy definitions.

[¶ 9.] *A. Whether the term "occupying" is ambiguous within the meaning of the policy definitions.*

[¶ 10.] Whether or not the term "occupying" is ambiguous as used in the insurance contract is an issue of first impression for this Court. As we have previously stated, "[a]n insurance policy is ambiguous when it 'is fairly susceptible to two constructions.'" *Id.*, ¶ 18 (quoting *American Family Mut. Inc. v. Elliot*, 523 N.W.2d 100, 102 (S.D.1994)). Ambiguity is not created merely because the parties offer different interpretations of the contract. *Alverson v. Northwestern Nat. Cas. Co.*, 1997 SD 9, ¶ 8, 559 N.W.2d 234, 235–36. In addition, "[a]mbiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words." *National Sun*, 1999 SD 63, ¶ 18, 596 N.W.2d at 48. We apply strict rules of construction when interpreting an insurance policy:

Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation.... This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

*Alverson*, 1997 SD 9, ¶ 8, 559 N.W.2d at 235 (quoting *Olson v. United States Fid. & Guar. Co.*, 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200).

[¶ 11.] The policy issued by General Casualty provides in pertinent part:

We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured' or 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner or driver's liability for these damages must result from the ownership, maintenance, or use of the 'uninsured' or 'underinsured motor vehicle.'

Included in the definition of "insured" is "anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" The policy defines "occupying" to mean "in, on, upon, getting in, on, out, or off."

[¶ 12.] This language is fairly standard in the insurance industry. Although we have not specifically addressed this issue before, the definition of "occupying" or "in or upon" has given rise to repeated litigation in many jurisdictions. There is a split of authority on whether there is coverage under the definition of "occupying" and it appears that there is no bright line rule for determining coverage under the policy definition of "occupying."

[¶ 13.] After examining the pertinent case law, we agree with those jurisdictions that have found the definition of "occupying" to be ambiguous. Indeed, the very fact that there is no bright line rule for interpreting "occupying" suggests that it is an ambiguous term. In *Tata v. Nichols,* the Supreme Court of Tennessee held the term "occupying" to be ambiguous and noted that "[t]he many different meanings given the word in the cases which have considered this issue, demonstrate that the word has no precise meaning, and is, therefore sufficiently ambiguous...." 848 S.W.2d 649, 651 (1993). The Supreme Court of Iowa has also found "occupying" to be ambiguous. *Henderson v. Hawkeye–Security Ins. Co.,* 252 Iowa 97, 106 N.W.2d 86, 89 (Iowa 1960) (citations omitted). In addition, as an Illinois court observed in a similar situation to the case before us:

> [I]t is the use of the word 'upon' which creates an ambiguity. It cannot mean that the insured, to be within the meaning of the clause, had to be couched on the roof of the car or on the running board or sitting on the hood.

*Wolf v. American Casualty Co.,* 2 Ill. App.2d 124, 118 N.E.2d 777, 780 (1954) (holding that a man standing between two insured vehicles while attempting to jump start one of them was "occupying" them when one of the vehicles between which he was standing was struck by a third vehicle).

[¶ 14.] We hold that the term "occupying" as used in the insurance contract is ambiguous and subject to differing interpretations. Accordingly, the interpretation most favorable to Roden must be adopted. *Alverson,* 1997 SD 9, ¶ 8, 559 N.W.2d at 235.

[¶ 15.] *B. Whether Roden was "occupying" the vehicle at the time of the accident.*

[¶ 16.] We now turn to the question of whether Roden occupied the vehicle at the time of the accident. The trial court ruled as a matter of law that Roden was occupying the vehicle when struck by Anderson's automobile; therefore, we review this finding de novo. *City of Deadwood v. Summit, Inc.,* 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25 (citations omitted). Generally, whether or not a person occupied a vehicle at a given time is factually intensive. *Tata,* 848 S.W.2d at 653. This case is unique, however. Because Roden remembers nothing about the accident, the testimony of the only other witness, Ryan Dunkle, is factually controlling. We have long recognized that facts proven by uncontradicted testimony not inherently improbable should be taken as conclusively established. *National Bank of Commerce of New York v. Bottolfson,* 55 SD 196, 225 N.W. 385, 386 (1929).

[¶ 17.] Courts have generally followed two basic approaches in determining whether a person occupied a vehicle for purposes of coverage under insurance contracts. The first approach is the literal approach in which a person cannot be "occupying" a vehicle unless part of him is inside the vehicle or he is in contact with the vehicle. The second approach does not define "occupying" literally, and centers upon whether the person was performing an act or acts that are normally associated with the immediate "use" of the vehicle. *Cuevas v. State Farm Mut. Auto. Ins. Co.,*

130 N.M. 539, 28 P.3d 527, 529 (N.M.Ct. App.2001) (citations omitted).

[¶ 18.] The majority of the jurisdictions have adopted the second approach. Of those jurisdictions that have chosen to give "occupying" a liberal interpretation several have adopted a four-part test.

[¶ 19.] In *Utica Mutual Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1009 (1984), the court adopted a four-part test. In *Contrisciane*, Kenneth Contrisciane was involved in a minor traffic accident. *Id.* at 1006. The police officer on the scene asked Mr. Contrisciane to get his license and registration from his vehicle. Mr. Contrisciane retrieved the requested items and was standing next to the officer's car. *Id.* The officer was in the car finishing the accident report. *Id.* at 1007. While standing next to the officer's car Mr. Contrisciane was struck and killed by an uninsured motorist. Mr. Contrisciane's car was approximately 97 feet from the squad car. *Id.*

[¶ 20.] Laura Contrisciane, as executrix of the estate of the decedent, filed an action against Utica Mutual Insurance claiming uninsured motorist coverage. *Id.* The issue before the court was whether the decedent was occupying the vehicle.[1] Ultimately the Pennsylvania Supreme Court found that the decedent was occupying in terms of the policy definition. *Id.* at 1009. In making this determination the court relied heavily on a four-part test. The test applied in determining whether the decedent was occupying the vehicle is as follows:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.* at 1009. The court in *Contrisciane* found the decedent was engaged in transactions related to the continued use of the vehicle. *Id.* The court pointed out that it was the use of the vehicle that precipitated the unfortunate series of events. *Id.* at 1009.

[¶ 21.] Many courts have since adopted the four-part test. *See also Gorham v. Guidant Mutual Ins. Co.*, 80 F.Supp.2d 540, 546 (D.Md. 2000); *Cuevas*, 28 P.3d at 529; *Downing v. Harleysville Ins. Co.*, 412 Pa.Super. 15, 602 A.2d 871, 874 (1992); *Tata*, 848 S.W.2d at 652 (Tenn.1993). The court in *Gorham* found the four-part test convincing and reasoned that:

The approach derived from *Tata* and *Contrisciane* offers a sensible structure for the task at hand. It takes into account, in one multifaceted test, many of the factors held to be critical in the analysis of occupancy clauses in uninsured motorist provisions by a variety of courts. As the submissions of the parties here bear out, the cases on this issue are intensely fact-driven. Results in favor of either party can be easily supported. The above test gives coherence to an area of the law where the use of a variety of tests creates the unseem-

---

1. The Utica policy read, " 'occupying' means in or upon or entering into or alighting from." *Contrisciane*, 473 A.2d at 1008.

ly appearance of arbitrary decision making.

*Gorham,* 80 F.Supp. 2d at 547.

[■] [¶ 22.] We also find the four-part test persuasive. We find the four-part test set forth above should be utilized in this jurisdiction when determining whether or not an individual is "occupying" the insured vehicle under the policy definitions. In analyzing the facts of this case under the four-part test, we must determine whether or not Roden was engaged in a transaction that was vehicle orientated and related to occupying the vehicle.

[¶ 23.] The first factor is whether there is a causal relation or connection between the injury and the use of the insured vehicle. Roden approached the pickup to talk to his supervisor about company business. The testimony of the supervisor, Ryan Dunkle [2] was as follows:

Q: As the project supervisor, did you have to go to different locations in town in your pickup?

A: 99 percent of the time, yes.

Q: Is that basically your office was your pickup?

A: Yes.

Q: And so at times when you were checking on these jobs, were you having discussions with the foremen of particular crews?

A: Yes. That's exactly, yes.

Q: And Roy Roden, was he foreman of a crew?

A: Yes, he was.

Q: Okay. So what were you guys talking about when he came over and was leaning on the vehicle?

A: At the time I had pulled over there I was going to basically do a routine check on what was going on, and I had asked him what was going on with his run, and that's what he started to talk to me about, what he was doing, why he was down the line from where the rest of his crew was and such forth.

Q: So you guys weren't just shooting the bull about some sporting event or something like that?

A: No.

Q: You were actually talking business?

A: Yes.

Q: And was that typical of you as the project supervisor, that you ran business out of your pickup?

A: Yes, always.

[¶ 24.] The second factor is that the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle. Again the testimony of Dunkle who was sitting in the company vehicle, is factually controlling:

Q: What was [Roden's] position in relation to the vehicle when you were talking to him?

A: When he first walked up he had basically pressed his body up against the driver's side door of the truck, and I had my window open and he was leaning in talking to me.

Q: And when you say leaning in and talking, what parts of his body were actually leaning on the pickup?

A: I'd say every part of his body was touching the truck except his feet. He was completely pressed up against the truck, and his elbows were pretty much in the window, his head was pretty much in the window because he was talking to me.

Q: How about his hands?

---

**2.** Dunkle's testimony is the only eye-witness to the accident. Roden's injuries were so extensive that he has no recollection of the event. No other eye-witnesses were identified.

A:  They were inside the window.

Q:  There are words that are used in the legal vernacular and one of them was he was occupying the vehicle. In your opinion, was he occupying the vehicle?

A:  I'd say he was, yes.

. . . . . . . .

Q:  And how much of Mr. Roden could you see from where you were sitting?

A:  How much of him? He was in my face. He was two inches away from me. I remember smelling his breath.

[¶ 25.]  The third factor is that the person must be vehicle oriented rather than highway or sidewalk oriented at the time. Both individuals were employees of the company and it was a company vehicle doing company business. From the above testimony, it is clear that Roden had his head in the truck and was talking company business with his immediate supervisor. That was his sole orientation rather than any connection with what was going on behind or to the side of him with a work project or otherwise.

[¶ 26.]  The final factor is that the person must also be engaged in a transaction essential to the use of the vehicle at the time. This was not an instance of a stranger approaching the Fiber Logic vehicle for directions or the current score of a ball game. The vehicle was Dunkle's mobile office for his work. There was no other alternative office for this meeting to take place. Dunkle testified he visited with Roden in the field a minimum of three times a day.

[¶ 27.]  After applying the four-part test to the uncontradicted testimony of Dunkle, we agree that Roden was occupying the vehicle at the time of the accident. The vehicle was an office on wheels of Fiber Logic engaged in its business at the time of the accident. *See Simpson v. U.S. Fi-* *delity & Guar. Co.,* 562 N.W.2d 627, 631 (Iowa 1997). Therefore, we hold as a matter of law that Roden occupied the vehicle at the time of the accident within the meaning of General Casualty's policy definitions.

[¶ 28.]  **2.  Whether the trial court erred in granting Roden's Motion for Summary Judgment on the issue of coverage.**

[¶ 29.]  After finding as a matter of law that Roden was occupying the vehicle at the time of the accident, the trial court granted Roden summary judgment on the issue of coverage. General Casualty contends that the trial court erred in granting Roden's motion for summary judgment because genuine issues of material fact exist as to where Roden was standing when struck by Anderson.

[¶ 30.]  In support of its argument, General Casualty points to hospital records that state Roden was "apparently crossing the road" when he was struck by Anderson. The report does not indicate, however, how the hospital obtained this information. Clearly, Roden who was incoherent at the time did not volunteer the information, and General Casualty has failed to identify any other source of this information. This statement in the hospital's records amounts to hearsay within hearsay and is not admissible as a business record under SDCL 19–16–10.

[¶ 31.]  General Casualty also argues that two other witnesses to the accident may offer different versions of the facts than the one offered by Dunkle. General Casualty did not depose these witnesses or offer affidavits stating their versions of the facts. According to SDCL 15–6–56(e), the non-moving party in a summary judgment proceeding "must set forth specific facts showing that there is a genuine issue for trial." Thus, General

Casualty may not rely on mere conclusory statements that these witnesses may offer alternate versions of the facts. Because General Casualty has failed to present specific facts showing that a genuine issue exists for trial, the trial court did not err in granting Roden's motion for summary judgment. *See Casazza v. State*, 2000 SD 120, ¶ 16, 616 N.W.2d 872, 876.

[¶ 32.] KONENKAMP, Justice, and JOHNSON, Circuit Judge, concur.

[¶ 33.] ZINTER, Justice, concurs with a writing.

[¶ 34.] AMUNDSON, Retired Justice, dissents.

[¶ 35.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

[¶ 36.] JOHNSON, Circuit Judge, sitting for SABERS, Justice, disqualified.

ZINTER, Justice (concurring).

[¶ 37.] I join the Court's opinion and write only to amplify its reasoning. First, it is noteworthy that the policy language at issue has been the subject of countless disputes in numerous courts for more than five decades. Yet, there has been no resolution of its meaning. In light of this history of conflicting results, one must conclude that the language "in, upon ..." is ambiguous. "A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *Alverson v. Northwestern Nat'l Cas. Co.*, 1997 SD 9, ¶ 8, 559 N.W.2d 234, 235 (citations omitted). Because courts cannot agree upon this provision's meaning, the ambiguity conclusion is compelling.

[¶ 38.] It is also compelling because, as the Court notes, the word "upon" is included in the definition of "occupying." All words of the definition must be presumed to mean something, and the word "upon" must mean something other than the remaining definitional words. *See Tata v. Nichols*, 848 S.W.2d 649, 653 (Tenn.1993) (stating that "unless 'upon' should be considered to have no meaning, it includes some relationship [with the automobile] different from 'in,' 'getting in,' 'getting on,' 'getting out,' and 'getting off' "). However, the exact nature of that other relationship is uncertain. That uncertainty and ambiguity require our interpretation of "upon" in favor of Roden. *See Alverson*, 1997 SD 9, ¶ 8, 559 N.W.2d at 235.

[¶ 39.] It is also noteworthy that, notwithstanding the extensive litigation over the contradictory interpretations of this insurance clause, the policy definition of "occupying" remains essentially unchanged today. In light of this history, it is not unreasonable to require insurers to specifically exclude this type of nexus with an auto if they claim it excluded from coverage. Until the Legislature or the insurance industry so acts, we must follow the majority of jurisdictions that attempt to establish a "rational limit" on the activity that may be encompassed within the term "occupying" and hold that " 'occupying' ... includes those [cases that] can establish a certain 'relationship' with the insured car at the time of the accident." *Tata*, 848 S.W.2d at 651. The factors used to determine that relationship are recited by the Court. I join the Court's application of those factors to this case. That application is consistent with the purpose of uninsured (and therefore underinsured) motorist statutes. *Id.* at 654.

[¶ 40.] With respect to summary judgment, I only add the observation that the medical records do not conflict with Mr. Dunkel's description of Roden's physical contact with the vehicle. The physicians' reports merely state that Roden crossed

the highway, which he obviously had to do before conducting business with Dunkel at the company pickup. Therefore, even if the medical records were admissible, they did not create a material issue of disputed fact.

[¶ 41.] I therefore concur.

AMUNDSON, Retired Justice (dissenting).

[¶ 42.] I respectfully dissent. The policy issued by General Casualty provides in pertinent part:

> We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured' or 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner or driver's liability for these damages must result from the ownership, maintenance, or use of the 'uninsured' or 'underinsured motor vehicle.'

Included in the definition of 'insured' is "anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' " The policy defines "occupying" to mean "in, on, upon, getting in, on, out, or off."

[¶ 43.] I agree with the majority opinion's determination that "occupying" as used in the insurance contract is ambiguous. I also agree with the majority opinion's application of the four-part test, as set forth in *Utica Mutual Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1009 (1984), to resolve the ambiguity of "occupying" in this context. That test requires this Court to consider whether:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

[¶ 44.] Where I part company from the majority opinion is the determination that Roden was "vehicle oriented rather than highway or sidewalk oriented at the time." In addressing this issue the majority opinion determines that because Roden "had his head in the truck and was talking company business with his immediate supervisor" the vehicle was his "sole orientation," thereby supporting its determination that Roden was "occupying" the vehicle.

[¶ 45.] The majority opinion's discussion is more suited to a workers' compensation claim than an underinsured motorist claim. Roden has already settled with the negligent tortfeasor, presumably he could also have filed a worker's compensation claim against his employer, now he is seeking to recover from his employer's motor vehicle insurance company for underinsured motorist coverage. Roden relies heavily upon the fact that the vehicle was an "office on wheels," as characterized by the majority opinion; however, Roden is attempting to recover from a motor vehicle liability policy and not an office liability policy. Nevertheless, the majority opinion is persuaded by this characterization in determining Roden was occupying the vehicle as a matter of law because the vehicle was somehow related to his work. While that may be relevant it is not determinative. In my opinion, the majority opinion's interpretation to the contrary is erroneous.

[¶ 46.] In determining if Roden was vehicle oriented the following facts are particularly relevant: (1) Roden was not assigned use of this vehicle; (2) Roden was not traveling in the vehicle; (3) Roden was

not using the vehicle as a vehicle whatsoever; (4) Roden did not go to work that day in the vehicle; (5) Roden was not using the vehicle in his work; (6) Roden was not working on the vehicle; (7) Roden was not attempting to use the vehicle for transportation to leave work; and, (8) Roden was not engaged in any act essential to the use of the vehicle. Instead, Roden was standing on the ground next to the vehicle, leaning against the vehicle and talking to its actual occupant.

[¶ 47.] Clearly, Roden was seriously injured, however, that does not mean that the terms of the underinsured policy should be rewritten and interpreted so that a third insurance coverage is provided so that there is another pocket to dig into.

[¶ 48.] For the reasons set forth above, I respectfully dissent.