GILBERTSON, Chief Justice
(concurring in part and dissenting in part).
[¶ 39.] I respectfully dissent as to the Court’s conclusion that Baldridge is entitled to habeas relief over a purported violation of a plea agreement. I would affirm on that issue since, he has failed to show any prejudice.
[¶ 40.] This is a habeas proceeding. Thus, I fully agree with the Court that to succeed Baldridge must establish he “was deprived of basic constitutional rights.” Moeller v. Weber, 2004 SD 110, ¶ 10, 689 N.W.2d 1, 6 (citation omitted). Under the Strickland standard, to establish a deprivation of the right to effective counsel, Baldridge must show (1) ineffective assistance of counsel and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984), reh’g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864.
[¶ 41.] The Court errs in its application of the standards for habeas relief. At ¶ 32 it acknowledges under Strickland for the petitioner to obtain relief, he or she must establish prejudice. However, at ¶ 34 n. 3 it faults this dissenter for requiring just that-a showing of prejudice. In previous cases concerning the review of plea bargain proceedings brought pursuant to a habeas challenge, we have applied a requirement that the applicant establish prejudice. Turner v. Weber, 2001 SD 125, 635 N.W.2d 587; Hopfinger v. Leapley, *22 511 N.W.2d 845 (S.D.1994); Petrilli v. Leapley, 491 N.W.2d 79 (S.D.1992).
[¶ 42.] The plea agreement required Baldridge to fully cooperate with law enforcement as to his knowledge of the sale of illegal drugs.[4] Nevertheless, the habeas court found that: “Baldridge claims that under the plea agreement the State was to inform the sentencing judge of the extent of the Petitioner’s cooperation with law enforcement.... The problem was, Bal-dridge claimed to know nothing of any help, so there was nothing for Niemann (defense attorney) to inform the judge of.” This finding is not surprising in light of Baldridge’s concession:
I told them straight up, I said, “I don’t know many people any more. I know people that do it, but I don’t know anything, so don’t even ask me to do a controlled buy.”
Moreover the pre-sentence report stated:
This officer attempted to contact Mr. Baldridge at the South Dakota State Penitentiary via his case manager. Messages were left at the penitentiary for the case manager to contact his officer in an effort to interview Mr. Bal-dridge and the messages were not returned.
Thus, the finding of the trial court that Baldridge in essence did nothing to cooperate with law enforcement is not clearly erroneous. Hofer v. Class, 1998 SD 58 ¶ 7, 578 N.W.2d 583, 585.
[¶ 43.] The Court differs with this conclusion. Yet, a thorough review of its factual analysis shows it relies upon Bal-dridge’s self-serving testimony. After hearing this same testimony, the habeas court ruled against him. “The credibility of witnesses and the evidentiary value of their testimony falls solely within the province of the [fact finder].” LDL Cattle Co. v. Guetter, 1996 SD 22, ¶22, 544 N.W.2d 523, 528 (quoting Bridge v. Karl’s, Inc., 538 N.W.2d 521, 525 (S.D.1995) (citing Miller v. Hernandez, 520 N.W.2d 266, 272 (S.D.1994))). It has long been the rule in this jurisdiction that a party does not have a license to get on the stand and bind the trial court as the fact finder by uncontra-dicted testimony no matter how inherently improbable it is.
“The general rule is well settled that where unimpeached witnesses testify distinctly and positively to a fact, and are uncontradicted, the jury are not at liberty to discredit their testimony, when opposed to a mere presumption to the contrary; but this is subject to the exception that where the statements of the witness are grossly improbable, or he has an interest in the question at *23 issue, courts and juries are not bound to refrain from exercising their judgment, and to blindly adopt the statements of such witness.”
Port Huron Engine & Thresher Co. v. Sherman, 14 S.D. 461, 467-68, 85 N.W. 1008, 1010 (1901) (quoting Elwood v. Telegraph Co., 45 N.Y. 549 (1871)).
Under those circumstances, and even though there was nothing in any of the other evidence appearing in the record that would throw doubt upon plaintiffs credibility, yet the jury had a right, if they disbelieved him, to find that he did not take the assignment in payment of fees or a previous debt due him. In Nicholson v. Conner, 8 Daly (N.Y.) 212 it was held that the rule that, where a witness is unimpeached and his evidence not contradicted, his testimony cannot be disregarded by the court or jury, does not apply where such witness is a party, and the credibility of such party is always a question for the jury, and a verdict may be found against his uncon-tradicted evidence.
Hudson v. Sheafe, 41 S.D. 475, 484, 171 N.W. 320, 322 (1919).
We believe this transaction as testified to by [the defendant] and his wife brings it squarely within the rule established in this state that where even unimpeached witnesses testify distinctly and positively to a fact and are uncontradicted, but the statements of the witnesses are grossly improbable or they have an interest in the question at issue, courts are not bound to accept the statements of such witnesses. Crilly v. Morris, 70 S.D. 584, 19 N.W.2d 836 [ (1945) ] and cases cited.
Jorgensen v. Jorgensen, 74 S.D. 239, 251, 51 N.W.2d 632, 638 (1952).
[¶ 44.] The testimony of attorney Niemann on this point has no independent source — it is simply what he was told by his client Baldridge. Since the testimony was no better than its source the trial court was empowered not to rely upon it in arriving at its ultimate decision. See Roden v. Gen. Cas. of Wisconsin, 2003 SD 130, ¶ 16, 671 N.W.2d 622, 626.
[¶ 45.] Having not heard or seen Bal-dridge personally, we are limited by our evidentiary standard of appellate review. While paying lip service to this concept, this Court then engages in a de novo review of Baldridge’s testimony and finds him credible. Keeping in mind that the burden for habeas relief falls upon Bal-dridge, not the State, there is no finding by the trial court that Baldridge is credible. Instead after hearing Baldridge’s claims and testimony it dismissed his petition. Since Baldridge’s testimony was uncontested, had the trial court believed it, obviously Baldridge would have been entitled to prevail.
[¶ 46.] There is no evidentiary basis to support the Court’s conclusion that “counsel was not even aware that the State breached the terms of the plea agreement.” Niemann had ten years experience in criminal defense work. He testified he had never had a malpractice case brought against him and Baldridge was the only client during this lengthy period of time to bring a habeas claim against him for ineffective representation. He testified at the habeas hearing, two and a half years after the sentencing hearing, to an extensive recollection of the de-briefing process of his client by the Division of Criminal Investigation. Niemann further testified:
I always-I got a copy of the PSI [pre-sentence investigation report] from the Court Services Officer, and I always read through that, and that always had the prior criminal history in it, and then I would take that over to the jail or at my office if they weren’t in the jail, and have them read through the PSI be *24 cause we are not allowed to make copies of that, and then after they had read through it, I would discuss it with them about what was in there, and about any additional information that they wanted me to present at the sentencing and I would fill that all out on my sentencing hearing form and get it all written down and go through it step by step at the sentencing hearing to make sure.
[¶47.] Moreover, one can only imagine the astonishment at the sentencing hearing had Baldridge’s defense counsel entered an objection that the prosecutor had remained silent when the plea bargain called upon prosecutor to inform the court prior to sentencing that Baldridge had done nothing to assist law enforcement with investigations of drug activity of which he had knowledge.
[¶ 48.] Baldridge cannot have it both ways. He cannot be entitled to habeas relief on the basis of ineffective counsel because his attorney failed to inform the trial court his client did nothing to assist law enforcement. Had that astonishing event occurred, Baldridge no doubt would then have raised the claim that his attorney was ineffective because he did inform the trial court that Baldridge did nothing.
[¶ 49.] In a similar situation, the Eleventh Circuit Court of Appeals found no violation of an agreement on the part of the prosecution where the prosecutor promised not to oppose a defendant’s request for a reduction of sentence conditioned on the defendant making a full and accurate disclosure to probation officials, which the defendant failed to fulfill. U.S. v. Mahique, 150 F.3d 1330, 1332 (11th Cir.1998), cert. denied, Mahique v. U.S., 525 U.S. 1090, 119 S.Ct. 843, 142 L.Ed.2d 698. Notably, the Eleventh Circuit has also opined:
The government did not breach its plea agreement with [the defendant]. By viewing a plea agreement as a contract, we imply that both the government and the defendant have obligations that they must perform to fulfill the agreement. See United States v. Howie, 166 F.3d 1166, 1168 (11th Cir.1999). The language of the plea agreement indicates that [the defendant’s] duty to make full disclosure to the government and probation office was a condition precedent to the government’s agreement to recommend a sentence at the low end of the guideline range. Based on the resolved facts in the PSI and the plea colloquy, [the defendant] did not make full and accurate disclosures to the probation office and misrepresented facts to the government. ...
U.S. v. Oduardo, 164 Fed.Appx. 945, 949, 2006 WL 231645, at *3 (11th Cir.2006).
[¶ 50.] For the above reasons, I would affirm the habeas court on this issue. I concur in the balance of the issues of the Court that no showing for habeas relief has been made. Thus, I would affirm the habeas court.

. The relevant part of the plea agreement stated:
2. Defendant will cooperate with all reasonable requests made by law enforcement officials concerning the ongoing investigation into criminal activity in the State of South Dakota and the nation including, but not limited to the Defendant’s participation in these activities.
3. Defendant will fully and truthfully apprise law enforcement officials of all of sources, contacts and associates involved in illegal drug or marijuana activity including the specific names, dates, times and places surrounding such activities. Any material misrepresentation or omission made will result in revocation of the plea bargain agreement in the State's discretion.
4.Defendant will, at the request of law enforcement, voluntarily submit to a lie detector test or polygraph examination concerning illegal activity or any of the statements] given to law enforcement pursuant to his agreement. Defendant's failure of this test may result in a revocation of this agreement at the State’s discretion.